[Civ. No. 14008. First Dist., Div. One. Jan. 20, 1950.]

CITY AND COUNTY OF SAN FRANCISCO, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

Cyril Appel, Ivores R. Dains and George Liebermann for Appellants.

Dion R. Holm, City Attorney, and A. Dal Thomson, Public Utilities Counsel, for Respondent.

BRAY, J.—This action is brought against defendants, Market Street Railway Company, a corporation, its directors[1] and its treasurer, by plaintiff, city and county of San Francisco, a municipal corporation, in its own behalf and for all persons possessing causes of action against defendant railway company, for an injunction to restrain the payment by it of certain moneys. A temporary restraining order and order to show cause was issued on the filing of the complaint. On the hearing an order was made denying a motion to vacate the temporary restraining order and an order for issuance of temporary injunction was granted. Defendants appeal from the latter order.

---

[1] Defendant Harry S. Scott was not served and has not appeared herein. Any reference to defendants herein does not include him. The corporation will be referred to as ''the railway company.'' Plaintiff city and county of San Francisco will be referred to as ''the city.''

## Main Question

The main question is whether, under the pleadings and evidence in this case, the issuance of a temporary injunction was proper.

## Pleadings

In the first of five causes of action, plaintiff alleges that since November 6, 1946, there has been pending an action in the San Francisco Superior Court brought by the city against the railway company for the sum of $2,826.79 for alleged negligence; that in the San Francisco and San Mateo County Superior Courts there are pending 192 tort actions brought by others than the city against the railway company, the total amount of the prayers being $2,770,976 (defendants in their answer deny liability in the city's actions, and allege that the total number of other actions pending is only 186 with total prayers of but $2,591,600.10); that as of September 29, 1944, the city acquired title to all of the operative properties of the railway company under a contract to pay $7,500,000; that the city made certain payments thereunder and on May 7, 1948, the city paid the railway company the sum of $1,945,345.70 which was the balance due; that unless restrained by the court, the railway company threatens to and will distribute said sum to its stockholders as a "so-called 'liquidating dividend' without any provision toward the payment of any judgment which may hereafter be rendered" in any of the actions before mentioned; that "Said fund" constitutes practically the whole of the property and assets owned by the railway company and that the transfer of any substantial portion of said fund to its stockholders will render the railway company insolvent and will deplete its assets to such extent that it will be unable to respond to the payment of the judgments which may be rendered; that if such distribution is made to the stockholders, the city and all holders of judgments to be rendered in the future will be required to sue the various stockholders and directors of the railway company in order to realize upon the judgments; that plaintiff and the others have no plain, speedy and adequate remedy; that the matters set forth are of common and general interest among all persons mentioned in the complaint, and all persons having causes of action against the railway company in which suits have not been filed; that these persons are numerous and that it is impracticable to bring all of them before the court and hence the city brings this suit in their behalf as well as in its own behalf.

The second count is the same as the first except that it substitutes for the allegations concerning the suit brought against the railway company by the city in the San Francisco Superior Court allegations concerning four negligence actions pending in the San Francisco Municipal Court brought by the city against the railway company, the aggregate sums prayed for being $1,691.09 (the railway company in its answer denies liability in these actions).

The third count incorporates the allegations of both the first and second counts and then alleges that the effect of any present distribution of said fund will render the "present fair salable value of the assets of defendant corporation less than the amount that will be required to pay defendant's probable liability on its existing debts as they become absolute and matured"; that the railway company "threatens to, and intends, as a so-called liquidating dividend to distribute said fund to the stockholders of defendant without receiving any consideration therefor."

The fourth cause of action is the same as the first except there is substituted for allegations concerning the suit in which the city is plaintiff, allegations concerning the pendency in the San Francisco Superior Court of eight tort actions brought by named plaintiffs in which both the city and the railway company are defendants, the total amount sued for being $176,916. It is further alleged that "if defendant corporation is permitted to denude itself of its assets and if judgment in any of said causes is entered against both defendants therein, the judgment creditor will undoubtedly refrain from endeavoring to pursue the directors or stockholders of said defendant corporation for the satisfaction of said judgment and will undoubtedly adopt the more expeditious course of pursuing the City and County of San Francisco alone upon such judgment. In such event, as a practical result, the City and County of San Francisco will alone be compelled to pay the whole of any such judgment, even though such judgment might be rendered against both defendants in said action." Defendants admitted the pendency of these actions but denied the other allegations.

In the fifth count, all of the allegations of the first two counts are incorporated. It is then alleged that there is pending in the District Court of the United States for the Northern District of California, Southern Division, a certain suit in which Standard Gas and Electric Company (referred to hereafter as "Standard") is plaintiff and the railway com-

pany is defendant. The complaint in that action is upon an open book account to recover the sum of $1,069,063.30 together with interest and costs; that defendants threaten to, and will, unless restrained, pay to Standard, in settlement of that suit, the sum of $550,000 and in addition will pay a $25,000 attorney's fee to the attorney for a committee representing certain prior preference stockholders of the railway company and the further sum of $12,500 to the members of the committee plus $4,500 for their expenses; that ever since 1935, Standard has owned 39.67 per cent of the outstanding voting stock of the railway company and through such ownership has controlled and now controls all of the officers and directors of the railway company and has formulated and now formulates in its own interest, and dictates all of the business policies and affairs of the railway company; that "solely by means of said domination and control, Standard has caused the plan to be adopted to pay immediately said alleged indebtedness, prior to any liquidation or dissolution proceeding in which all creditors of Market Street Railway Company would share in its assets equally"; that the intended payment will diminish the assets of the railway company to the extent that it will become insolvent and unable to respond to the payment of the judgments mentioned in all the counts of the complaint; that if such payment is made, the city and the persons in whose behalf this action is brought, will have to sue the directors consenting to such disbursement and that a receiver or trustee in bankruptcy will be required to institute an action against Standard to recover such preferential payment. Defendants admitted this suit and the 39.67 per cent ownership by Standard, but denied the remainder of the count, except that they allege that the settlement will be made only if it is approved by the Securities and Exchange Commission and the District Court. They also denied as to all counts that they had threatened or intended to pay out the liquidating dividend prior to the settlement of all actions pending.

The complaint asked that defendants be restrained, pending the trial of the action, from distributing to the stockholders any portion of the money before mentioned, and from paying therefrom any sums to Standard, until adequate provision is made, with the approval of the court, for the payment by defendants of all judgments which may be rendered against the railway company in the actions mentioned in the complaint "or any others of like character, and for the satisfaction by defendant corporation of causes of action of similar kind upon

which suits may not have been filed'' and that upon the trial a permanent injunction be granted and if necessary a receiver be appointed to control said fund.

At the hearing of the order to show cause, defendants' demurrer to the complaint was overruled and the hearing was had on the complaint, which was unverified, two affidavits offered by plaintiff, the verified answer of defendants, and five affidavits offered by defendants.

CAN THE CITY MAINTAIN AN ACTION ON BEHALF OF OTHERS?

■ The first question to be determined is whether the city, whose causes of action against the railway company total only $4,517.88, a very small amount as compared to the amounts alleged to be claimed by other plaintiffs, is legally entitled to sue on behalf of those others. The joinder of these persons is based on section 382 of the Code of Civil Procedure which provides: ''. . . and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.'' There is no requirement that the persons for whom the city is acting here be residents of San Francisco nor need they be necessary parties. (*Weaver* v. *Pasadena Tournament of Roses Assn.*, 32 Cal.2d 833 [198 P.2d 514].) Assuming for the purposes of this question only, that an injunction will lie to prevent distribution of the railway company's assets before the tort actions can be determined, there would be a common and general interest of all the parties plaintiff in the subject matter of this action. Certainly the parties are numerous and it would be impracticable to bring them all before the court. The situation is different here than in *Carey* v. *Brown,* 58 Cal. 180, in which it was sought to join adjacent landowners in a suit to quiet title. There the other persons had no interest in the particular land claimed by plaintiff and defendants. A judgment in favor of plaintiff would simply have quieted his title to land in which none of the others had any interest.

*Watson* v. *Santa Carmelita etc. Co.*, 58 Cal.App.2d 709 [137 P.2d 757], seems to hold that a representative suit is proper only where the action is for the purpose of conserving a common fund or property in which all of those represented have an interest. Here, all would have an interest in seeing that the assets of the company were not distributed without considera-

tion of their pending suits. Defendants claim that there is no "fund" here. Strictly speaking, that is true. However, all plaintiffs would have a common interest in the *total* assets of the railway company. These moneys are a part of the total assets, and under the allegations of the complaint (we are now merely considering the allegations of the complaint as a pleading) it is alleged that the total assets of the railway company are insufficient to pay its present and contingent debts. The fact that the common interest is attempted to be asserted as to only a part of the total would not invalidate the action. The whole includes all its parts. Moreover, defendants did not demur on the ground of a defect of parties plaintiff. (See *Carey* v. *Brown, supra* [58 Cal. 180].)

In holding that in a proper case the city might bring a representative action on behalf of other litigants, we do not include the problematical and highly indefinite persons whom defendants, in their verified answer, deny exist, and whom plaintiff includes in its unverified complaint, as persons who may hereafter bring actions. The representation would have to be limited to those who actually had filed suits prior to the commencement of this action.

### BOND

A more serious question arises as to whether a city, whose financial interest in the action is only $4,517.88, can obtain an injunction on behalf of others whose financial interest therein is over two million dollars, without giving a bond to indemnify defendants if it is determined that the plaintiffs were not entitled to the injunction. Section 529 of the Code of Civil Procedure requires such a bond in all injunction proceedings "except when it is granted on the application of . . . a county, [or] a municipal corporation . . ." While, technically speaking, the application is that of the city, in view of the small interest of the city as compared to that of the others, it can hardly be considered the city's application, and while no bond could be required as to that portion relating to the city's own claim, a bond should be required from the others for whom the city is acting. However, this question was not presented to the court below by an application for an order requiring a bond as to that portion of the injunction not applying directly to the city's claims, and it is doubtful if the point can be raised now. In view of our decision on the merits of the appeal, it becomes unnecessary to determine this question.

### Showing on Issuance of Injunction

■ ". . . injunction is not the proper remedy to prevent a person from doing an act which he has never undertaken or threatened to undertake . . ." (14 Cal.Jur. 208; see, also, *Pezold* v. *Amalgamated etc. Workmen,* 54 Cal.App.2d 120, 127 [128 P.2d 611].) Injunction "is an extraordinary power, and is to be exercised always with great caution and in those cases only where it fairly appears 'upon all the papers presented, before such injunction is granted, that the plaintiff will suffer irreparable injury if it be not issued, or that it is necessary to preserve the estates of the parties, or some sufficient cause showing that need of hasty action exists.' (Joyce on Injunctions, sec. 109.) The power, therefore, should rarely, if ever, be exercised in a doubtful case. 'The right must be clear, the injury impending and threatened, so as to be averted only by the protective preventive process of injunction.' " (*Schwartz* v. *Arata,* 45 Cal.App. 596, 601 [188 P. 313].) The showing here was not sufficient. ■ The main contention upon which the right to an injunction is based is that defendants "threaten to, and will, distribute said sum paid to defendant corporation by plaintiff . . . to its stockholders as a so-called 'liquidating dividend' without any provision toward the payment of any judgment . . ." What is the evidence to support this allegation? The complaint is unverified. While the law permits a complaint by a city to be unverified and its sufficiency as a complaint cannot be challenged on that ground, it is doubtful if an unverified complaint can be used as an affidavit, particularly when contradicted by sworn affidavits. However, assuming that the unverified complaint may be used as an affidavit, the statements that defendants threaten to and will distribute the fund in violation of the rights of creditors, are mere conclusions, and will not justify the issuance of an injunction. "It is, of course, permissible to grant an injunction based solely upon the allegations of a verified complaint. (Code Civ. Proc., § 527.) If the complaint does not state a cause of action, however, it is improper to grant an injunction based thereon. But this is not the only test that must be applied. Where the complaint is the sole basis of the order, and the complaint is treated as an affidavit, its sufficiency must be tested by the same rules applicable to oral testimony. Conclusions that might stand as a matter of pleading are not competent to justify the issuance of an injunction. The rules are thus stated in *Willis* v. *Lauridson,* 161 Cal. 106 at page 108 [118 P. 530] . . . '. . . Unless the

656

statement, in the nature of a conclusion, is supported by the facts or circumstances on which it rests, it is insufficient to sustain an application for injunction. If the complaint, otherwise unsupported, is open to attack on general demurrer, it is insufficient.' . . .

"In *McPheeters* v. *McMahon,* 131 Cal.App. 418, 425 [21 P.2d 606], this division of the court declared the rule to be that 'An injunction should rarely, if ever, be issued in a doubtful case. The power should be exercised only when the right is clear, the injury impending and threatened, so as to be averted only by the protecting preventive process of injunction.' " (*Bank of America* v. *Williams,* 89 Cal.App.2d 21, 23-24 [200 P.2d 151].)

"A complaint for an injunction which alleges only general conclusions, not warranted by any pleading of facts, does not state a cause of action to enjoin the acts complained of. [Citing cases.]" (*E. H. Renzel Co.* v. *Warehousemen's Union,* 16 Cal.2d 369, 373 [106 P.2d 1].)

 In answer to these conclusions in the unverified complaint, defendants filed a verified answer denying them, and alleged that on April 30, 1948, the railway company had assets of over $3,462,612.20, current liabilities of only $24,357.15; that the alleged indebtedness to Standard of $1,069,063.30 could be settled for $592,000; that a petition requesting permission to make such a compromise is now pending before the Securities and Exchange Commission; that on May 7, 1948, there were 186 damage actions pending in all courts, the total amount prayed for being $2,591,600.10; that based on past experience the probable liability of the railway company in these actions will not exceed $500,000; that the time for bringing further damage actions against it had long since expired, with the exception of possible claims for damages for personal injuries sustained by minors prior to September 30, 1944, and it had no knowledge of any such possible claims of minors; that the railway company is solvent and the present salable value of its assets is in excess of the amount of its existing debts and its probable liability on all actions presently brought and which could be brought against it, and not barred by the statutes of limitation. Defendants cross-complained asking judgment for interest on the $1,945,345.70 from May 7, 1948, claiming that the instituting of this action, for the "purpose of preventing the defendants from the free and unrestricted lawful use" of the moneys paid by the city, con-

stituted a violation of the contract under which the railway company sold its properties to the city.

Defendants also filed affidavits, one by each of the three defendant directors who were served in this action and one by the railway company's treasurer. Each affiant swore that the admissions, denials and allegations set forth in the answer and cross-complaint were true and correct and adopted them as if set forth at length in his affidavit. In rebuttal, plaintiff filed two affidavits. The first was by plaintiff's public utilities counsel in which he set forth an extract from the railway company's financial statement issued to its stockholders for the year 1947. This extract reads: "It is expected that the Legislature of the State of California will be in session on or about March 1, 1948, at which time the charter amendment will be presented to it for approval. After such approval it is anticipated that the City and County of San Francisco will act promptly to issue and sell such bonds and use such part of the proceeds as is necessary to pay the balance of its indebtedness to your Company. Thereafter the Management will take appropriate steps for the payment of an initial liquidating dividend." In this affidavit there was also set forth an extract from the railway company's report to the Railroad Commission which extract shows that Standard controlled the railway company by stock ownership. The other affidavit is by the chief assistant controller of the city. After stating his length of service and the fact that he is a certified public accountant, he sets forth his analysis of the assets and liabilities of the railway company as shown in defendants' answer and after taking the sum set forth in the prayer of plaintiff's complaint as a "Sum to be set aside for tort claims (Prayers of complaint) $2,591,600.10" and charging the railway company with the whole liability to Standard of $1,069,063.30, arrives at a "Difference between net worth and damage claims" of $222,408.35. He then states that the railway company's annual report to its stockholders as of December 31, 1947, stated "that the net deficit for said year was the sum of $208,221.49."

In rebuttal of these affidavits defendants offered the affidavit of the railway company's secretary calling attention to the fact that the extract of the financial statement of 1947 appearing in the counteraffidavit of plaintiff's public utilities counsel, was taken out of its context. He then attached the full statement which shows that immediately following the extract appears the following: "To summarize, the Company will

not be in position to finally settle its affairs until it:'' (1) collects from the city the balance then due, (2) sells its remaining real estate, office furniture and fixtures, (3) pays its indebtedness to Standard, (4) disposes of 197 damage actions with prayers totaling $2,770,976, and (5) disposes of claims for compensation and benefits of former employees. Thus it appears that plaintiff's whole claim of threats by defendants to distribute the fund is based solely upon one sentence in the 1947 statement which, read in context, shows that no such step was either contemplated or threatened. Again, the insolvency which plaintiff concludes might occur, can only occur if defendants violate the Uniform Fraudulent Conveyance Act (Civ. Code, § 3439 et seq.) That such a violation will take place cannot be presumed, nor can the bare conclusion of plaintiff, unsupported by any facts to justify it, be accepted by the court as the sole basis for the extraordinary remedy of injunction.

All of the equities alleged in the complaint and in plaintiff's affidavits are fully and specifically controverted by defendants' answer and affidavits. The situation here, by reason of the fact that the latter show that factually the matters set forth in plaintiff's complaint and affidavits to the effect that defendants intend to distribute the fund without consideration of the damage actions are untrue, is somewhat similar to that where a preliminary injunction has been granted on a complaint which is unsupported by affidavits, and an answer is filed denying all of the equities of the complaint. In such cases it has been held that a motion to dissolve the injunction must be granted for the reason that the court granting the injunction was ''without sufficient *proof* before it to justify the exercise of so extraordinary a power.'' (*Schwartz* v. *Arata, supra* [45 Cal.App. 601, 604].)

DEMURRER SHOULD HAVE BEEN SUSTAINED TO COUNT FOUR

■ In count four, plaintiff's alleged cause of action is based upon its claim that certain actions for damages have been brought in which the city and the railway company are codefendants, and that if the railway company distributes its assets, and if judgments are obtained against both defendants, the judgment·creditors will pursue the city alone. Plaintiff has not cited and we have been unable to find any authorities which authorize a court on the application of one defendant in a damage suit to restrain a codefendant from disposing of his assets. Therefore, no cause of action lies under this count.

## COUNT FIVE

The fifth count refers to the action pending in the federal court, brought by Standard against the railway company, and seeks to restrain the railway company from paying out money in settlement of such action. On the face of the complaint it would appear, assuming all of the other allegations of the complaint to be true, that a payment to Standard, which it is alleged controls the railway company by stock ownership, in settlement of that action, would be a preference, and therefore could be enjoined. (*Title Ins. etc. Co.* v. *California Dev. Co.*, 171 Cal. 173 [152 P. 542].) Therefore, as a pleading, the count is sufficient against demurrer.

The order appealed from is reversed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied February 18, 1950, and respondent's petition for a hearing by the Supreme Court was denied March 21, 1950. Shenk, J., and Carter, J., voted for a hearing.