[Civ. No. 21587. Second Dist., Div. One. Jan. 2, 1957.]

THE PEOPLE ex rel. Director of Agriculture, Respondent, v. PARAMOUNT CITRUS ASSOCIATION, INC. (a Corporation), Appellant.

G. V. Weikert for Appellant.

Edmund G. Brown, Attorney General, Walter S. Rountree, Assistant Attorney General, Alberta Gattone and John E. Fourt, Deputy Attorneys General, for Respondent.

Clayson, Stark & Rothrock, Donald D. Stark, George G. Grover, Surr & Hellyer, Robert J. Bierschbach and Bridgett & Marcus as Amici Curiae on behalf of Respondent.

THE COURT.—This action is one prosecuted by the attorney general under the provisions of division 6, chapter 10, of the Agricultural Code, and particularly section 1300.19 thereof, and upon the complaint of the Director of Agriculture.

Pursuant to the relevant provisions of the Agricultural Code, the Director of Agriculture issued a marketing order effective October 1, 1954, requiring processors of lemon products to place 75 per cent of all their lemons received for processing during the 1954-1955 marketing season in the "Stabilization Pool" and to be there subject to the control of the Director of Agriculture, acting through and upon the advice of the Lemon Products Advisory Board, which was appointed by the director pursuant to the authority granted him by section 1300.15 of the Agricultural Code.

From time to time during the marketing year 1954-1955 the percentage of lemons which any processor was required to place in the Stabilization Pool was reduced, until in June of 1955 the percentage was reduced to 58 per cent. The appellant, Paramount Citrus Association, Inc., is a processor of lemons.

Under the provisions of the marketing orders and the rules and regulations for the administration thereof issued by the director, each processor was obligated each week to report to the advisory board the amount of lemons received by it for processing during the preceding week, and the Stabilization Pool obligation incurred thereon. The processor might meet its obligations to the Stabilization Pool by storing the lemons and delivering warehouse receipts therefor issued in the name of the board, or by delivering to the board in lieu of

lemons concentrated lemon juice or single-strength juice or warehouse receipts therefor, or by delivering to a processor for conversion into citric acid lemons of a tonnage equal to the unfulfilled obligation of the processor or their equivalent in concentrated or in single-strength juice, or by entering into an agreement with the director for postponed compliance, and posting a bond in a penal sum in an amount equal to 100 per cent of the processor's Stabilization Pool obligation computed at the rate of $60 per ton, or an equal amount in cash, as security for compliance at the deferred date which could not be later than August 31 of the marketing year (in this case August 31 of 1955). The rules and regulations provided that all products delivered to the board in fulfillment of a processor's obligations to the Stabilization Pool should be certified by the United States Department of Agriculture as having been processed in California, and that all bulk containers should be sealed by that department.

The marketing order also provided that in each marketing season between the 1st day of October and a date to be fixed by the board, which should not be earlier than March 1 nor later than May 30, lemons for use as free tonnage lemons (those not subject to Pool obligations) "may be sold from the Stabilization Pool" and that they might be sold after May 30 upon the affirmative vote of six members of the board, and a finding by the board that such action would not endanger the price stability of lemons or lemon products.

The appellant, in accordance with the terms of the marketing order and regulations, reported to the board all lemons acquired by it for processing, but as to 34 separate weeks did not deposit any of said lemons with or hold them for the Stabilization Pool, nor did it execute any agreement for postponed compliance or post any bond or cash with the board. It did, early in the marketing year, deliver to the board 16 barrels of concentrate, equivalent to 64 fruit tons, for conversion into citric acid, and these were accepted by the board but only 69 hundredths tons were credited to appellant's current Stabilization Pool obligation, the balance of the 64 tons being credited against appellant's obligation for the preceding season.

Shortly thereafter appellant delivered to the processing plant for conversion into citric acid for credit against its Pool obligation 16 additional barrels of concentrate, which was the equivalent of 65.4 tons of lemons, but this concentrate was rejected by the board as not having been certified or

sealed by the United States Department of Agriculture. At this time the appellant orally notified the representative of the board that it had approximately 103 additional barrels for delivery. Of this 103 barrels appellant on June 27, 1955, delivered 81 barrels of lemon concentrate, which were certified and sealed by the United States Department of Agriculture and which were accepted by the board, but were not credited against appellant's delinquency. The board's manager testified that the 81 barrels of concentrate were the approximate equivalent of 250 tons of fruit, but neither plaintiff nor defendant offered any other evidence as to the citric acid content of this concentrate.[1]

The original complaint filed herein was in 15 counts. In the first count facts relevant to the promulgation of the marketing order and the rules and regulations, the failure of the appellant to comply with those rules and regulations, and the processing and sale by the appellant of the lemons which under the marketing order it was obligated to hold for the account of the Pool, were alleged, as well as other facts relevant to plaintiff's prayer for an injunction against further violations of the marketing order by appellant.

Each of the remaining 14 counts charged appellant with a violation of the marketing order in that it had, during a calendar week designated in that count, incurred an obligation to the Stabilization Pool of a certain number of tons, or citric acid pounds, of lemons, and in violation of the marketing order had failed to deliver any portion thereof to the Pool; and as to each violation sought a penalty of $500 or such lesser sum as the court should assess pursuant to section 1300.19, subdivision (b) of the Agricultural Code.

By its supplemental complaint filed during the progress of the trial, the People alleged in separate counts 21 further violations of the same character covering 21 weeks during the period between January 1, 1955, and the week ending June 25, 1955. By its answer[2] appellant set forth two affirmative defenses, the first of which alleged in substance that 96 per cent of all the lemons produced in the United States are

---

[1]The board apparently had no difficulty in ascertaining the fruit content of the 16 barrels which it refused, as it is shown on Exhibit 7 as being the equivalent of 64.71 fruit tons.

[2]We do not here refer to the denials contained in the answer, inasmuch as many of them are on information and belief as to matters which were of public record and therefore not subject to such denials, and as all other material allegations of the complaint which were denied were admitted at the trial, with the exceptions which we will hereafter note.

produced in California; that 99 per cent of all the lemons processed in the United States are processed in this state; that Sunkist Growers, Inc., and Exchange Lemon Products Company, which is alleged to be a subsidiary of Sunkist, control and handle 86 per cent of all lemons produced and processed in this state and have a virtual monopoly of the handling and marketing of lemon products in this state; that said Sunkist Growers, Inc., has since 1942 been subject to the terms of a decree of a United States court enjoining it from committing acts in violation of the federal antitrust laws including obstructing, restricting, or interfering with purchase by others of fruits; that under the provisions of the California Marketing Act of 1937 any marketing order must be assented to by processors who handle or process not less than 65 per cent of the volume of the agricultural commodity regulated thereby, and that by reason of the fact that Sunkist dominates and controls 86 per cent of the lemons the purposes of the act are defeated and nullified and the will of Sunkist imposed upon others engaged in the lemon industry in this state; that in order to operate its processing plant efficiently appellant must process at least 10 thousand tons of lemons during each season; that it can acquire that quantity of lemons and has established an outlet for that quantity; that compliance with the decree of the advisory board that 75 per cent of all lemons acquired for processing during the present season be set aside and turned over to the Stabilization Pool would leave appellant able to meet less than 25 per cent of the requirements of its customers; that Sunkist has a surplus of lemons for processing but other processors in the state have more demand for their lemon products than they can supply, and that Sunkist refuses to sell any of said lemons to appellant but has turned its surplus into the Stabilization Pool for conversion into citric acid; that appellant attempted to buy ten thousand tons of lemons from the Stabilization Pool at the price fixed by the advisory board, but the board refused to sell said lemons upon the ground that the sale thereof might unstabilize the market; and that the appellant had petitioned the Director of Agriculture to review the decision of the advisory board refusing to sell lemons to appellant from the Stabilization Pool.[3]

By its second affirmative defense appellant pleaded that the

[3]It was stipulated at the trial that a hearing was had upon this petition and the action of the advisory board affirmed by the Director of Agriculture.

marketing order and the administrative rules and regulations issued thereunder "as the same have been and are now being interpreted and administered" are contrary to and in violation of the provisions of the Marketing Act and sections 11 and 13 of article I of the Constitution of the state and section 1 of the 14th Amendment to the Constitution of the United States.

During the trial of the action appellant tendered, but the court refused to receive, an amendment to its answer by which it pleaded the same matters set forth in its second separate defense (denominated by the answer as third answer to the first amended complaint) and alleged as the facts which it contended constituted the alleged acts of the advisory board in interpreting and administering the marketing order, the following: (a) that the board had interpreted the marketing order as controlling the handling and processing of lemons produced outside the State of California, and that by reason thereof appellant had been prevented from procuring lemons outside the state and processing them within the state and thus supplying the demands of its customers and enabling it to meet its Stabilization Pool obligations; (b) that the Lemon Products Advisory Board was illegally constituted in that the marketing order did not provide for a method of nominating and appointing members and alternate members of the board representing any processors other than Exchange Lemon Products, but that the director had nevertheless appointed persons purporting to represent other cooperative marketing organizations and processors which are not cooperative marketing organizations; (c) that by its interpretation and administration of the marketing order the advisory board has discriminated against the growers of inland California lemons and the processors thereof, including appellant, and in favor of the growers of coastal California lemons and the processors thereof.

The trial court held that none of the affirmative defenses either pleaded or tendered by appellant constituted defenses to the action, and although it received some evidence as to facts pleaded in these affirmative defenses refused to receive other evidence offered by the appellant in support of them, but required appellant's counsel to make offers of proof, to which offers the court sustained plaintiff's objections or its own objections.

By its findings of fact the court found that the appellant had willfully failed to comply with the marketing order and

the rules and regulations promulgated by the director thereunder in that it had willfully failed to hold for the benefit of the Stabilization Pool or to deliver to that Pool the percentages of lemons acquired by it for processing which were from time to time required by the marketing order and rules and regulations. It found that the total amount of lemons which appellant was required to deliver to the Stabilization Pool during the period from October 1, 1954, to June 15, 1955, amounted to 1,701.14 standard tons of lemons; that appellant had delivered and there had been accepted by the board for compliance with appellant's Stabilization Pool obligation 81 barrels of lemon concentrate, but that the appellant had not furnished to the advisory board a laboratory analysis of the citric acid content thereof; and that the appellant was entitled to credit against its obligation of 1,701.14 tons of lemons, whenever it should furnish a laboratory analysis of the citric acid content of said 81 barrels of concentrate.

The court further found that the appellant would, unless enjoined, continue to violate the marketing order and the rules and regulations thereunder by processing all lemons acquired by it for that purpose and without withholding or delivering to the Stabilization Pool the percentage of said lemons required by the act. The court further found that the allegations of each of the counts of the amended complaint and the supplemental complaint which alleged weekly violations of the marketing order and sought penalties of $500 for each of such violations were true; and by its conclusions of law the court concluded that the plaintiff was entitled to recover the maximum penalty of $500 for each of the weekly violations alleged in the amended and supplemental complaints, or a total of $17,000; that the matters pleaded in the second affirmative defense set forth in appellant's answer were insufficient to constitute a defense to the action; and that the third affirmative defense set forth did not plead any facts but conclusions of law and constituted no defense to the action.

By its judgment the court gave judgment in favor of the plaintiff and against the defendant in the sum of $17,000 as civil penalties for appellant's failure on 34 separate weeks to deliver or hold its quota of lemons for the Stabilization Pool pursuant to the marketing order and the rules and regulations. It further ordered appellant to forthwith deliver to the Lemon Products Advisory Board for the Stabilization Pool 1,707.14 standard tons of lemons ''or such lesser sum as

shall be due after credit for 81 barrels of lemon concentrate''
and such additional quantities of lemons or approved products
as shall become due on each succeeding week under "the
Marketing Order for Lemon Products, as Amended, effective
November 3, 1954, or any validly adopted amendment, con-
tinuation, re-adoption or re-issuance of said Order; Or: That
defendants execute an agreement in writing for postponed
compliance in accordance with Article III, Section E, sub-
section 7 of the Marketing Order for Lemon Products, as
Amended, effective November 3, 1954, and deposit security
therefor as provided in said Marketing Order and the Admin-
istrative Rules and Regulations issued thereunder.'' It fur-
ther enjoined appellant from processing lemons unless it should
have delivered to the Stabilization Pool lemons or approved
lemon products equal to appellant's Stabilization Pool obliga-
tion "presently due" and which might thereafter become
due under any marketing order.

Appellant by its opening brief makes three general assign-
ments of error. In its presentation of these points, however,
it has in most instances wholly failed to support the claims
of error by citation of authority or by argument showing that
the alleged errors of the trial court resulted in prejudice to
appellant, and has left it to the court to search the record
and the law in order to uphold its claims of error.

Appellant's first point is "Appellant did not have a fair
trial." It then asks us to read the entire record of oral
proceedings (502 pages, which we have read with care) and
charges the trial court with becoming an advocate for the
plaintiff and with compelling appellant to present its defenses
by offers of proof rather than through the examination of
witnesses. A reading of the transcript of the oral proceedings
does indicate that the trial court injected itself into the
conduct of the trial to an extent much beyond that necessary
to the proper conduct of the trial, and to an extent which
certainly must have embarrassed and hindered counsel for the
appellant in the presentation of its case. ■ However, the
court did permit offers of proof of the matters as to which
it prevented appellant's counsel from examining its wit-
nesses, and appellant has by its briefs utterly failed to show
either by argument or authority that any of the matters
which it offered to prove were relevant to any material issue
presented by the pleadings, and we do not feel called upon to
search the records and the authorities to establish error. That

is the duty of counsel (see 3 Witkin, California Procedure (1954), § 150, pp. 2332-2334, and cases there cited).

The second point argued by appellant in its brief is done so under the heading ''In regard to the pleadings.'' Under this heading appellant calls our attention to the matters alleged in the second and third affirmative defenses and to the fact that the court ruled that these did not allege facts sufficient to constitute a defense to the action, but again it utterly fails to furnish us with argument or authority to establish that the trial court erred in so ruling. Appellant also, under this heading, asserts that the court abused its discretion in refusing to allow it to file its proposed amendment to its answer, to which we have heretofore alluded, and in excluding all evidence in support thereof. Here again appellant fails to, by argument, point out wherein the facts alleged therein would constitute a defense to the action; and the only authority cited by it in support of its contention, *State Board* v. *Thrift-D-Lux Cleaners, Inc.,* 40 Cal.2d 436 [254 P.2d 29], in no wise supports its contention, as the Supreme Court in that case was dealing with the constitutionality of the Dry Cleaners Act of 1945, while in the case at bar appellant admits not only the constitutionality of the statutes here involved but that of the marketing order issued thereunder, and complains only of the manner in which the act is administered by the board. Appellant fails to sustain by argument or authority its claim that any of the circumstances alleged in its proposed amendment, if established, would have in any wise constituted a defense to this action, or that they would have, if proved, established an invasion of its constitutional rights.

The third point argued in the briefs is argued under the heading ''In regard to the opinion from the bench.'' Under this point counsel criticizes the court's oral announcement of its decision at the close of the case, seemingly contending that thereby the court demonstrated that it did not understand the facts or the law involved, and that therefore the court's findings of fact and conclusions of law cannot be sustained.

While the opinion of the trial judge may be examined by an appellate court as an aid in interpreting the findings of fact and conclusions of law, an opinion rendered by the trial court cannot be used as a substitute for the findings of fact and conclusions of law made by the court, nor used to modify or defeat them. (*Strudthoff* v. *Yates,* 28 Cal.2d 602 [170 P.2d 873].) Furthermore, a reading of the remarks

of the trial court which are adverted to by appellant as the opinion from the bench indicates that the learned trial judge had a very full and fine grasp of both the issues of fact and of law that had been presented to him, and we find nothing in the court's oral statement that is in material conflict with its findings of fact and conclusions of law.

■ Appellant's next contention is that there is no evidence to support the finding of the trial court that appellant willfully and deliberately violated the marketing order. In support of this contention it contends that the evidence showed without conflict that it had attempted to buy from the Stabilization Pool 10,000 tons of lemons in order to meet the demands of its customers and to fulfill its obligations to the Pool, and that this demonstrated that it was not acting willfully or in bad faith in failing to comply with its obligations to the Pool.

The provisions of the marketing order did not make it obligatory upon the advisory board to sell lemons from the Pool to appellant or to any other processor; but, assuming that appellant in good faith construed the marketing order as making a sale obligatory, it was initially within the province of the advisory board, and finally within that of the director, to construe it, and when appellant's request had been denied by both the board and the director it made no other effort to make up its delinquencies, although the evidence shows, and the court found, that it then had the ability so to do. The trial court was therefore fully justified in finding that appellant's violations of the marketing order were willful and deliberate.

■ Appellant would have us review the order of the director sustaining the advisory board's refusal to sell appellant lemons from the Pool. This we cannot do. The marketing order does not, as we have stated, make it obligatory upon the board to make a sale from the Stabilization Pool, but permitted it so to do. The question as to whether the board and the director properly exercised their discretion is therefore one of fact and not of law. ■ The evidence offered before the director in the proceedings had to review the action of the advisory board refusing appellant's request to purchase lemons from the Pool is not before us, and we must presume that the director's decision was supported by substantial evidence and was not arbitrary.

It is suggested by the attorney general that the director's decision cannot be collaterally attacked here, but can only be

attacked by proceedings had pursuant to section 1094.5 of the Code of Civil Procedure; but inasmuch as no showing was made by the appellant which would have justified the trial court in holding that the decision of the director was not supported by any substantial evidence and constituted an abuse of his discretion, we are not called upon to decide whether or not the director's decision is subject to collateral attack.

■ A careful study of the record convinces us that the findings of the trial court as to the violations of the marketing order, and the judgment assessing penalties in the amount of $17,000, cannot be sustained. The evidence shows without conflict that on June 27, 1955, appellant delivered, and the board accepted for compliance with appellant's Stabilization Pool obligation, 81 barrels of lemon concentrate; yet the board, while accepting this 81 barrels as delivered in partial fulfillment of appellant's obligation, gave appellant no credit therefor and the trial court, in assessing penalties, allowed no credit therefor. This was done seemingly upon the basis that appellant had not furnished a laboratory analysis showing the citric acid content of the concentrate in the barrels.[4] In our opinion, however, the plaintiff was obligated, as a part of its case and in support of its claim for penalties, to prove the weeks as to which appellant was delinquent in fulfilling its obligations to the Pool. The evidence having shown without conflict that appellant had delivered and the board had accepted 81 barrels of concentrate, it was incumbent upon the plaintiff to prove to what extent if any appellant remained in default under its obligations to the Pool. The record is not devoid of evidence from which this fact could be ascertained, for the manager of the advisory board testified that the concentrate delivered would be the equivalent of approximately 250 tons of fruit. This concentrate having been accepted as partial compliance by appellant with its obligation, it follows that if it satisfied appellant's obligation for one or more full weeks, no penalty could be exacted for those weeks. An examination of Plaintiff's Exhibit 7 demonstrates that if this 250 tons of fruit had been applied to appellant's obligations during the first part of the marketing season, it would have satisfied its obligation for at least the first four weeks;

---

[4]Our attention has not been called to any regulation requiring appellant to furnish a laboratory analysis, but if one does exist the failure to supply such analysis would only constitute grounds for refusing to accept the concentrate and would not justify accepting it but refusing to give credit for it.

or if credited upon appellant's obligation at the latter part of the period for which penalties were sought, it would have satisfied at least the last six weeks on account of which appellant has been assessed penalties.

It was the duty of the trial court to make some proper allocation of the 81 barrels of concentrate which admittedly were accepted by the board in fulfillment of appellant's obligation, and it could not assess penalties for weeks as to which appellant's default in its obligations was rectified by the concentrate delivered.

The final question presented by appellant concerns the mandatory injunction granted by the court. As we have heretofore pointed out the court not only enjoined appellant from further violations of the marketing order in question but ordered appellant to forthwith deliver the total amount of the delinquencies on account of which it had assessed penalties of $17,000 for the benefit of the Stabilization Pool, and enjoined appellant from engaging in business as a processor until it had complied with this mandatory order.

We are convinced that the mandatory provisions of the decree granted by the judgment cannot be sustained. The injunction speaks from the time of the entry of the judgment. Judgment was entered on August 11, 1955. At that time the marketing year was drawing to a close and there is no evidence whatsoever which would justify a finding or conclusion that the deposit of appellant's delinquent tonnage into the Stabilization Pool would have any effect to stabilize the market price of lemons or lemon products for that marketing year, or to rectify any detriment caused by appellant's wrongdoing, or have any other effect than to further penalize appellant for its violations of the act.

The act itself does not grant to the court, in an action such as this, any express power to compel compliance with the act, but does permit the court to, in addition to assessing penalties of not *over* $500 for each violation, enjoin *further violations thereof*. (Agr. Code, § 1300.19, subd. (h).) The attorney general, however, asserts that under subdivision (m) of that section the court had the power to issue a mandatory injunction compelling appellant to fulfill the obligation to the Pool as to which it had defaulted.

So far as pertinent here, this section provides: "The penalties and remedies prescribed in this section with respect to any violation mentioned in this section . . . shall be cumulative with any and all other civil, criminal or administrative

rights, remedies, forfeitures or penalties *provided or allowed by law with respect to any such violation."* [Emphasis added.] It is the attorney general's contention that under this section the court could exercise its general equitable powers and grant injunctive relief beyond that specified in subdivision (h) of the section which limits relief of that kind to enjoining the defendant from further violations.

We do not so interpret subdivision (m), but believe that it was the intent of the Legislature by that subdivision to make it clear that those charged with the enforcement of the act were free to pursue any or all of the remedies provided by law for violation of the act, and it was not the intent to empower a court to affirmatively enforce compliance with the act by requiring the delivery of lemons or of lemon products into the Stabilization Pool. We think it is clear that when the Legislature by subdivision (h) of the section expressly conferred the power to enjoin against further violations of the act, it intended that that should be the limit of the court's power to issue an injunction. If it had been the legislative intent to empower a court to make an order which in effect compels specific performance of the obligations imposed by a marketing order, the Legislature would have, by apt language, expressly conferred that power. It may be further said that the power of a court of equity to grant a mandatory injunction is not a remedy provided or allowed by law "with respect to . . ." the violations covered by section 1300.19.

Assuming, however, that subdivision (m) of the section does give the court the right, in actions of this kind, to exercise its general equitable power and to grant injunctive relief beyond that which it is expressly authorized to grant under subdivision (h) of the section, it is still apparent that the court improperly exercised this power.

 While the propriety of affording equitable relief by an injunction either prohibitory or mandatory rests in the sound discretion of the trial court, this discretion is not arbitrary but must be exercised in accordance with the fixed principles and precedents of equity jurisprudence. (*Diederichsen* v. *Sutch*, 47 Cal.App.2d 646 [118 P.2d 863].) The power to issue an injunction is an extraordinary one to be exercised always with great caution and only in those cases where it appears that the plaintiff will suffer irreparable injury if it is not issued. The office of the writ is a preventive one and it is to be used to restrain a wrongdoer, "not to punish him after the wrong has been done or to

compel him to undo it." An injunction lies only to prevent injury and has no application to wrongs which have been completed. (*Stewart* v. *Superior Court*, 100 Cal. 543, 546-547 [35 P. 156, 563]; *Blake* v. *City of Eureka*, 201 Cal. 643, 661 [258 P. 945]; *City & County of San Francisco* v. *Market St. Ry. Co.*, 95 Cal.App.2d 648, 656 [213 P.2d 780]; *Blumenthal* v. *Di Giorgio Fruit Corp.*, 30 Cal.App.2d 11, 18 [85 P.2d 580].)

In the present case the evidence shows without substantial conflict that appellant had processed and marketed that portion of the lemons acquired by it which under the marketing order it was obligated to withhold from the market or deliver to the board, and that any effect that its violations of the act might have upon the market price of lemons or upon the marketing by other processors of their lemon products had occurred prior to the issuance of the mandatory injunction with which we are concerned. It is thus apparent that the prohibitory injunction granted by the court, which enjoined appellant from further engaging in business as a processor without complying with the marketing order, fully served the preventive purposes for which an injunction is granted, and that the mandatory injunction served only to penalize the appellant for the wrong which it had committed. and to force it to undo those wrongs. Its further effect was to grant the plaintiff damages payable in kind without any proof as to the amount of damage actually sustained.

 Undoubtedly a court of equity has power to issue a mandatory injunction where the wrong is continuing in character and can only be remedied by requiring affirmative action on the part of the wrongdoer—for example, nuisances, continuing trespasses, and encroachment upon easements. But here the wrongs which the court by its mandatory injunction sought to right were not continuing ones but completed ones; and the prohibitory provisions of the injunction granted, as we have heretofore said, adequately prohibited appellant from a repetition of those wrongs.

Paragraph II of the judgment made and entered by the trial court by which plaintiff is awarded judgment against appellant in the sum of $17,000 as civil penalties is reversed, with directions to the trial court to receive such further competent evidence as the parties may offer relative to the citric acid content of the 81 barrels of concentrate delivered to and accepted by the Lemon Products Advisory Board on June 27, 1955, and to make such allocation thereof to the

delinquencies for which penalties are sought as the court shall find proper, and thereafter to enter judgment awarding plaintiff penalties, in such sum as the court may find just, against the appellant as to the delinquency for each week which is not fully satisfied by such allocation, not to exceed $500 for each violation.

Paragraph III of the judgment which reads as follows, is reversed:

"That the defendant, Paramount Citrus Association, Inc., a corporation, is hereby ordered and directed to forthwith deliver to the Lemon Products Advisory Board for the Stabilization Pool 1707.14 standard tons of lemons (36.5 citric acid pounds per ton) or such lesser sum as shall be due after credit for 81 barrels of lemon concentrate delivered on June 27, 1955 or the equivalent of said quantity of lemons in processed lemon products of a character and quality approved by the Lemon Products Advisory Board for Stabilization Pool compliance for the 1954-1955 marketing season, and such additional quantities of lemons or approved products as shall be or become due on each succeeding week thereafter for so long as there shall remain any Stabilization Pool obligation of said defendant accruing under the Marketing Order for Lemon Products, as Amended, effective November 3, 1954, or any validly adopted amendment, continuation, readoption or reissuance of said Order;

"Or:

"That defendants execute an agreement in writing for postponed compliance in accordance with Article III, Section E, subsection 7 of the Marketing Order for Lemon Products, as Amended, effective November 3, 1954, and deposit security therefor as provided in said Marketing Order and the Administrative Rules and Regulations issued thereunder;"

Paragraph IV of the judgment is modified to read as follows, and as so modified is affirmed:

"It is further ordered, adjudged, and decreed that:

"The defendant, Paramount Citrus Association, Inc., a corporation, its officers, agents, employees, attorneys, representatives, and assigns are hereby permanently enjoined and restrained from processing, sorting, shipping, grading, extracting, grinding, crushing, or otherwise processing lemons for the purpose of preparing them for market in processed form and from marketing, contracting for the sale of, shipping, selling, transferring or transporting, or otherwise entering into the channels of trade any lemons for processing use or

processed lemon products until and unless said defendants shall have delivered to the Stabilization Pool of the Lemon Products Advisory Board lemons or approved lemon products equal to their total Stabilization Pool obligation when and as such obligatoin shall become due under any Marketing Order presently in effect or any administrative orders, rules or regulations issued pursuant thereto, or, until and unless the defendants shall have executed an agreement in writing for postponed compliance in accordance with Article III, Section E, subsection 7 of the Marketing Order for Lemon Products as Amended, effective November 3, 1954, or any validly adopted amendment, continuation, readoption or reissuance thereof and shall have deposited security therefor as provided in said Marketing Order and the Administrative Rules and Regulations issued pursuant thereto.''

A petition for a rehearing was denied January 25, 1957, and respondent's petition for a hearing by the Supreme Court was denied February 27, 1957. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.