Filed 10/27/15  Penney v. Prime Healthcare Services—San Dimas, LLC CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| YOLANDA PENNEY, | B257279 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC427326) |
| v. | |
| PRIME HEALTHCARE SERVICES— SAN DIMAS, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed and remanded.

Reed Smith, Thomas E. Hill, Paula M. Mitchell, Mara D. Curtis for Defendant and Appellant.

Law Office of Joseph Antonelli, Joseph Antonelli, Janelle C. Carney; Law Office of Kevin T. Barnes, Kevin T. Barnes, Gregg Lander for Plaintiff and Respondent.

_____

## SUMMARY

Parties are litigants in an employment class action. Prime Healthcare Services—San Dimas LLC (San Dimas), the owner of San Dimas Community Hospital, appeals from an order granting plaintiff Yolanda Penney's motion for a preliminary injunction prohibiting San Dimas from implementing an arbitration program.[1]

We previously stayed the portion of the injunction purporting to restrain San Dimas from pursuing arbitration or arbitration agreements with individuals who were not class members or with respect to claims that were unrelated to the instant litigation, after San Dimas filed a petition for a writ of supersedeas with this Court. (*Penny v. Prime Healthcare Services—San Dimas, LLC* (Aug. 6, 2014, B257279).)

We now reverse the grant of the preliminary injunction motion.

## BACKGROUND

This litigation began in December 2009, when Penney filed a complaint asserting various wage and hour claims on behalf of herself and others similarly situated against San Dimas, as well as violation of the California Labor Code Private Attorneys General Act (Lab. Code, §§ 2698-2699) (PAGA). In October 2012, this Court reversed the trial court's denial of class certification with respect to one sub-class (the paystub class), but affirmed the remainder of the denial. (*Penny v. San Dimas Community Hospital* (Oct. 30, 2012, B235088).) The trial court certified the paystub class on February 8, 2013, and on February 28, 2013, class members were notified via mail. Class members were given until April 15, 2013, to opt out of the class.

Almost a year later, on March 3, 2014, San Dimas distributed a Mutual Agreement to Arbitrate (MAA) along with a cover memorandum to all employees. The cover memorandum stated that all employees—newly hired and existing—would be required to sign the MAA. The MAA, inter alia, stated that the parties "may bring and pursue claims against the other only in their individual capacities, and may not bring, pursue, or act as a plaintiff or class member, in any purported class or collective proceeding" and neither

---

[1] The court records refer to plaintiff's last name as both Penny and Penney. The Court will refer to plaintiff as Penney.

party "may bring, pursue, or act as a plaintiff or representative in any purported representative proceeding or action, including any claims under [PAGA]." Neither the MAA nor the cover memorandum makes any express reference to the instant litigation.[2]

On April 7, 2014, Penney's counsel contacted San Dimas's litigation counsel in this matter concerned that the arbitration program "essentially require[s] [class members] to forego [*sic*] pursuing this action, as well as the PAGA action, that is pending before Judge Stern [trial judge]." San Dimas's litigation counsel responded that he had not been involved in the rollout of the arbitration program and did not have any information about it but stated he would find out from San Dimas. On April 8, 2014, Penney's counsel gave notice that she would appear ex parte on April 10, 2014, and seek some form of injunctive relief related to the arbitration program.

On April 9, 2014, San Dimas's litigation counsel in this matter wrote Penney's counsel a letter stating that he had "confirmed with [his] client that the concerns you have raised regarding the recent rollout of an arbitration program at San Dimas Community Hospital are misplaced. This program has been implemented nationwide by Prime HealthCare," San Dimas's parent company, and "neither the arbitration program nor the [MAA] that documents the program are intended by Prime Healthcare to impact in any way the existing legal rights of employees at San Dimas Community Hospital regarding the *Penney* litigation." San Dimas's litigation counsel further stated that to "address and dispel any concerns and/or confusion that employees at [San Dimas] may have concerning how their signing the [MAA] may impact their existing legal rights in the

---

[2] In her brief, Penney inaccurately asserts that "[a]fter [San Dimas] distributed the [MAA] to its employees on March 3, 2014, [San Dimas] managers told employees to return a postcard requesting exclusion from this class action suit," citing to two employee declarations Penney filed in support of her motion for a preliminary injunction. Both declarations confusingly recite the relevant facts in this order: the distribution of the MAA in the first week of March *2014*, receipt by the employee of notice of class action the first week of April *2013*, managers encouraging the employee to return the postcard to opt-out of the class without specifying the timeframe, managers or supervisors telling the employee to sign the arbitration agreement in March or April *2014*. Class members were given until April 15, *2013*, to opt out of the class by returning the postcard mailed with the notice of class action.

3

*Penney* litigation, [San Dimas] has prepared and will be distributing the attached 'notice to All Employees Regarding Impact of Arbitration Agreement on Existing Legal Rights in *Penney* Class Action' ('Notice')."

The Notice to employees, which San Dimas distributed the next day, April 10, 2014, states that San Dimas "wishes to assure employees that neither the new arbitration program nor the mandatory Arbitration Agreement are intended by [San Dimas] to have any effect on the existing legal rights of employees with respect to the *Penney* lawsuit. So as to be absolutely clear on this topic, [San Dimas] hereby confirms that: [¶] **No employee will be considered by [San Dimas] to have waived or otherwise relinquished his or her existing legal rights in the *Penney* litigation by signing the Arbitration Agreement.**"

In the meantime, also on April 10, 2014, Penney appeared ex parte requesting a temporary injunction or an order to show cause why a preliminary injunction should not be entered "regulating communications by [San Dimas] with class members," including inter alia ordering San Dimas to immediately cease and desist its campaign to obtain the unconscionable MAA and to rescind any signed MAA's from any class member and "any aggrieved employee." In support of her application, Penney filed declarations from two class members dated April 8, 2014, two days before the Notice was distributed, stating that the MAA was "causing confusion with the employees as it seems to take away [their] rights despite the class notice [they] received about 1 year ago"; both declarants were "concerned by signing this [MAA] I will not be able to pursue my rights as a class member or an employee in this class action"; one declarant had "been told by other employees that they want to participate in the class but are confused of their rights as a result of the misleading and abusive communication sent by" San Dimas in its MAA and cover letter; and the other declarant thought "it is unfair to require me to sign such an agreement when it requires me to give up rights in this case as well as any representative

4

action against [San Dimas]" and had "been told by other employees that they want to participate in the class action and do not want to sign the [MAA]." [3]

At the April 10, 2014 ex parte hearing, the trial court granted Penney's request for an order to show cause, but did not issue a temporary restraining order. The next day, April 11, 2014, Penney filed a motion for a preliminary injunction. In a declaration dated the same day, class counsel declared that San Dimas's "proposed remedy to 'carve out' the class members right in this litigation is not acceptable" and San Dimas "has abused its right to communicate with its employees concerning this case." Class counsel's declaration also asserted that the MAA "seeks a complete release of all claims of any nature related to the legal issues in this action" and that San Dimas was "soliciting improper and unlawful releases (under the guise of arbitration agreements) based on misleading and deceptive communications."

After opposition and reply, the trial court held a hearing on the preliminary injunction motion on May 22, 2014, and took the matter under submission. [4] On June 20, 2014, the trial court granted Penney's motion for a preliminary injunction. The trial court found that "[Penney] has established that certain of [San Dimas's] actions will cause irreparable harm if [San Dimas is] not enjoined from communicating to the class members of aggrieved employees about the current litigation and from further demanding distributing or collecting any arbitration agreements from the class members that will affect the rights of class members during the pendency of this action" and that Penney had established that San Dimas is "threatening the rights of class members who are represented by class counsel." The trial court then ordered San Dimas to provide Penney with the names and contact information for "each class member and aggrieved non-

---

[3] Both San Dimas and Penney filed objections to the other's declarations submitted on the motion for preliminary injunction, but the trial court apparently did not rule on either party's objections. In any event, neither party has appealed from the trial court's failure to make an evidentiary ruling.

[4] There was no reporter at the May 22, 2014 hearing, and thus there is no reporter's transcript for the hearing. San Dimas's unopposed motion for a settled statement of the hearing was denied by the trial court.

5

exempt employees who signed" an MAA and enjoined San Dimas during the pendency of the class action "from asserting or compelling arbitration of any class member or aggrieved employee whether that employee signed or did not sign" an MAA and from "retaliating against any class member or aggrieved employee from either participating in this litigation or refusing to sign" an MAA. The order further enjoined San Dimas and its officer, agents and employees from further communications with class members and all other aggrieved non-exempt employees that "directly or indirectly relate to material issues in the pending class action except for communications in the ordinary course of business or for [San Dimas's] business needs," or that "may act to undermine the effectiveness, purpose or orderly administration of this class action," as well as to "refrain from initiating further unilateral discussions/negotiations with class members and all other aggrieved non-exempt employees that effectively seek to dismiss this action" except through class counsel. The court also ordered San Dimas to provide the "name of each non-exempt employee who signed [the MAA] and acknowledgment of receipt of [San Dimas's] employee handbook that references the arbitration agreement," to provide "any and all documents obtained or written as a result of communications with [San Dimas, its counsel or its human resources department] as a result of [San Dimas's] contact with class members and all other aggrieved non-exempt employees related to this lawsuit."

On June 27, 2014, San Dimas filed a notice of appeal from the order granting the preliminary injunction. San Dimas filed in the trial court an ex parte application for a stay of enforcement of the injunction order pending appeal, which the trial court denied on July 15, 2014.

On July 15, 2014, San Dimas filed a petition for a writ of supersedeas with this Court seeking a stay of the injunction order. We granted a temporary stay order on July 24, 2014, pending briefing and after opposition, granted the petition on August 6, 2014. Our order stated, "[t]hat portion of the injunction that purports to restrain [San Dimas] from pursuing arbitration or arbitration agreements (1) with individuals who are not class members or (2) with respect to claims that are unrelated to the instant litigation is hereby

stayed" and "[w]e refrain from issuing a stay as to provisions (c) and (d) of the injunction, which are mandatory and are automatically stayed pending appeal."

## DISCUSSION

San Dimas contends that the trial court erred in granting the preliminary injunction because Penney failed to articulate a clear "right" to be protected, failed to make a prima facie showing of an imminent and irreparable injury as adequate remedies at law existed, failed to properly balance the relative interim harm to parties if an injunction was or was not granted with the likelihood that Penney would prevail on the merits, and the injunction was overly broad and impermissibly vague. Because the preliminary injunction is overly broad, we reverse.

To obtain a preliminary injunction, the plaintiff must establish the defendant should be restrained from the challenged activity pending trial. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69; *Planned Parenthood v. Wilson* (1991) 234 Cal.App.3d 1662, 1667.) Generally, the standard of review for grant or denial of a preliminary injunction is whether the trial court committed an abuse of discretion. (*Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1145.) In exercising that discretion, the court must consider "two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.) We review each determination for an abuse of discretion (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 890) and reverse an order granting a preliminary injunction upon finding an abuse of discretion as to either factor (*Teachers Ins. & Annuity Ass'n v. Furlotti* (1999) 70 Cal.App.4th 1487, 1493).

Code of Civil Procedure section 527, subdivision (b) authorizes the grant of a preliminary injunction in a class action and Code of Civil Procedure section 526, subdivision (a)(3), authorizes the issuance of an injunction at any stage of the proceedings to maintain the status quo even if the complaint does not seek equitable relief. (Code Civ. Proc., §§ 527, subd. (b) & 526, subd. (a)(3) ["An injunction may be granted . . . [¶] . . . [¶] . . . [w]hen it appears . . . that a party to the action is doing, or

7

threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual"].) "An injunction cannot issue in a vacuum based on the proponents' fears about something that may happen in the future. It must be supported by actual evidence that there is a realistic prospect that the party enjoined intends to engage in the prohibited activity." (*Korean Philadelphia Presbyterian Church v. California Presbytery* (2000) 77 Cal.App.4th 1069, 1084; see *San Francisco v. Market S. R. Co.* (1950) 95 Cal.App.2d 648, 655 quoting *Schwartz v. Arata* (1920) 45 Cal.App. 596, 601 [injunctive power should be exercised only when "'the injury [is] impending and threatened, so as to be averted only by the protective preventive process of injunction'"].)

Here, the trial court was presented with evidence that San Dimas implemented an arbitration program which, initially, on its face required employees—including class members in this litigation—to relinquish their right to participate in any class action or PAGA action and to only bring claims in their individual capacities in an arbitration. If no other evidence was presented, the trial court might properly have restrained San Dimas from pursuing arbitration or arbitration agreements with class members with respect to claims that are subject of the instant litigation. However, the trial court was also presented with evidence that San Dimas issued a Notice to all employees explicitly stating that the arbitration agreement was not intended to have any effect on the existing legal rights of employees with respect to the instant litigation and explicitly confirmed that "no employee will be considered by [San Dimas] to have waived or otherwise relinquished his or her existing rights in the *Penney* litigation by signing the [MAA]." Thus, the evidence does not suggest "a realistic prospect" that San Dimas intends to "initiat[e] further unilateral discussions/negotiations with class members and all other aggrieved non-exempt employees that effectively seek to dismiss this action," to "undermine the effectiveness, purpose of orderly administration of this class action," or to otherwise affect class members rights under this litigation. (See *Korean Philadelphia Presbyterian Church*, *supra*, 77 Cal.App.4th at p. 1084; see also *East Bay Mun. Utility*

8

*Dist. v. California Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1113, 1126 ["An injunction properly issues only where the right to be protected is clear, injury is impending and so immediately likely as only to be avoided by issuance of the injunction"].)

Moreover, the trial court's injunction order broadly prohibits San Dimas from "asserting or compelling arbitration of any class member or aggrieved employee[5] whether that employee did or did not sign" an MAA without regard to whether the claim is the subject of the instant litigation or not. The pending class action litigation does not insulate class members from employment actions unrelated to the litigation. San Dimas remains free to implement an arbitration program (which excludes the claims in this litigation) and the propriety of such an arbitration program and the enforceability of the MAA's—and any challenges to them—are beyond the scope of this case.

## DISPOSITION

The order granting the preliminary injunction is reversed and the preliminary injunction is dissolved. The matter is remanded to the trial court for proceedings consistent with this opinion.

Appellant is to recover its costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

---

[5] The order apparently seeks to enjoin San Dimas from asserting or compelling arbitration of non-class member, "aggrieved employees." Given that the opt-out period for the class has ended, this inclusion is also overly broad.

9