[Civ. No. 7675.   Third Dist.   Feb. 27, 1950.]

W. J. COX, Respondent, v. SWEN E. WESTLING et al., Appellants.

Milo Ayer, T. R. Vilas and Stanley C. Smallwood for Appellants.

Brunswig Sholars, A. L. Crawford and Bruce McMullen for Respondent.

PEEK, J.—This is an action by plaintiff for rescission of a contract of sale of a strip and resaw mill, and to recover the amount expended by him to place the mill in working condition. The basis of the action is the alleged intentional fraud of the defendant sellers in representing the cost and market value of the mill and the machinery, the condition and capacity of the mill, and the availability of materials for processing.

The defendant's answer denied the allegations of fraud and by cross-complaint prayed for judgment in the amount of the balance due on the purchase price of the mill evidenced by a promissory note executed by plaintiff to defendants. The findings of fact were favorable to the plaintiff and judgment was entered in his favor from which defendants prosecute this appeal.

Defendants' attack upon the judgment, which appears to be well founded, is essentially twofold, (1) that the evidence is insufficient to sustain the finding that plaintiff relied upon the alleged representations and (2) that said representations were not representations of fact but were nothing more than mere statements of opinion and therefore were not fraudulent.

The evidence shows that while plaintiff, who is a farmer with no experience in the lumber or milling business, was at a lumber mill in Tuolumne County he expressed an interest in acquiring a mill and was introduced to defendant Silva who informed plaintiff he had one for sale. Thereafter plaintiff and Silva met at the latter's mill at which time Silva quoted a price of $16,000 for the mill. Plaintiff stated that he had no personal experience in the operation of such a business but that he had talked to one Hodgson who would operate the mill for him, and that he was willing to take Hodgson's word that he could do so. Plaintiff further told Silva that he desired first to discuss the purchase with Hodgson before making any decision. Shortly thereafter plaintiff and Silva again met, at which time defendant Westling was also in attendance. It was there represented to plaintiff, in regard to the question of available material for processing, that there were two mills in the vicinity which would furnish materials sufficient to pay the overhead; that one or two new mills were to be built in that area and as soon as the weather permitted an additional mill would commence operations and that material would be available from that mill as well. On this occasion plaintiff was informed that seven men were required to operate the mill, that 7,000 laths per day would pay the operating expenses and that sufficient additional material to turn out 20,000 laths per day would be available if and when the other mills mentioned were able to operate. Also at this meeting plaintiff was told that the machinery was in good working order, that the mill would process 20,000 laths per day. A list was then given him which showed the price of the machines then in the mill, their cost of installation and the cost of setting up the entire mill, the total of which was in excess of $16,000. At the con-

clusion of that meeting plaintiff informed defendants that because of his lack of knowledge concerning the business he would decide nothing then but would suggest a subsequent meeting at his ranch at which time his friend Hodgson could be in attendance. Such a meeting was held at which the parties again discussed price, the machinery, capacity of the mill, and availability of material. At this final meeting plaintiff decided to purchase the mill for $14,180, and all of the parties present went to Sonora where the transaction was completed. Although plaintiff was not sure whether or not Hodgson had seen the mill prior to plaintiff's decision to purchase, Hodgson himself testified he inspected the mill before the contract was signed in Sonora. Neither party had seen the mill in operation. However, subsequently thereto plaintiff, together with Hodgson and a third party, whom the plaintiff met on the road and whom he referred to as an expert but whose name he could not recall, did inspect the mill. While the date of such inspection was not definitely established, the testimony, in view of certain questions which were asked the plaintiff concerning whether or not he followed the expert's advice, would seem to indicate that this inspection trip was made prior to the purchase of the mill. Plaintiff stated that the unidentified expert informed him that the machinery would have to be rearranged before the mill could operate efficiently but that Hodgson believed he could make out if material were available.

On cross-examination plaintiff, in response to a question relative to the capacity of the mill and the availability of materials, replied that he considered Silva's statements to be sales talk, that he knew the mill was not producing 20,000 laths a day, that he did not believe that it ever had but that Silva had represented that it would produce that amount. Additionally he testified that Silva did not represent that the defendants had any contracts for material and he knew that if the other mills did not go into operation materials would not be available. He further stated that the reason he wanted Hodgson to participate in his discussions with the defendants was because he desired Hodgson to know all about the prospective purchase, in order that he could discuss it with Hodgson, and Hodgson in turn "could see if he thought we could make it." His testimony in regard to the price of the mill was that Silva had told him that in his opinion the mill was worth $16,000, and that he felt that defendants were trying to get as high a price for it as they could and that he was trying to get it as low as he could.

Hodgson's testimony shows that he had neither owned nor operated such a business and knew nothing about operating the same; that he had no experience in acquiring the necessary materials, the hiring of men or the selling of the finished product; that he agreed to operate the mill before plaintiff had purchased the same and before he had seen it. Hodgson further testified that the highest production made after Cox acquired the mill was approximately 6,000 laths during an eight-hour period and that on the day following the purchase he discovered that material sufficient to produce 20,000 laths was not available.

Lastly an expert called as a witness by plaintiff testified that the mill was not capable of producing 20,000 laths a day, that the machinery was protected by no safety devices, and that in his opinion the mill was worth nothing.

While the evidence establishes that the defendants represented that the mill cost $16,000 there is nothing in the record that such representation was false. There is no evidence that the defendants represented the actual market value of the mill to be $16,000, the only evidence being that defendants represented that it was worth $16,000 and that plaintiff considered such representation to be "sales talk."

While it is true that a statement as to the value of property may under some circumstances be regarded as a representation of fact (*Stallman* v. *Schwartz*, 76 Cal.App.2d 406 [173 P.2d 388]) it will not be so regarded where the representation is understood to be a mere statement of opinion (*Alberda* v. *Smith*, 2 Cal.App.2d 74 [37 P.2d 509]; 12 Cal.Jur. 729, 730). That plaintiff so considered defendants' statement is established by his own testimony that he understood it to be a part of defendants' sales talk.

In regard to the representations as to the capacity of the mill and availability of material therefor, the foregoing evidence establishes that they were not believed by plaintiff. Such lack of belief precludes reliance. (*Smith* v. *Brown*, 59 Cal.App.2d 836 [140 P.2d 86].) As to the condition of the machinery, the evidence does establish that it was not properly arranged for efficient production and lacked safety devices. However, the evidence shows no representation was made that the machinery was efficiently arranged or that it was equipped with safety devices but only that the machinery was in "top working order."

The elements of actionable fraud frequently have been summarized as follows:

"When a cause arises out of an alleged false representation, the plaintiff, in order to prevail, must ordinarily show that the representation was as to a material fact; that such fact was false and known to be false by the party making it, or else recklessly made, or without reasonable grounds for believing its truth; that the representation was made with intent to induce the other party to do or refrain from doing some act; that it was relied upon by the other party—in other words, that such other party was actually misled and deceived and induced by it to act or refrain from acting; that in so acting or refraining from acting he was ignorant of the falsity of the representation and reasonably believed it to be true; and that he thereby suffered damage or injury. The absence of any one of the elements is generally fatal to a recovery." (12 Cal.Jur. 724-725.) (*Wheat* v. *McNeill*, 111 Cal.App. 72, 78 [295 P. 102]; *Andrew* v. *Bankers & Shippers Ins. Co.*, 101 Cal.App. 566, 575 [281 P. 1091]; see, also, 37 C.J.S. 215.)

Applying the rule as stated to the evidence disclosed by the record herein, it is readily apparent that since one or more of the aforementioned elements is lacking with regard to each of the alleged representations made by defendants to plaintiff, the judgment must be reversed.

The judgment is reversed, and the cause is remanded with instructions to enter judgment for the defendants on their cross-complaint.

Adams, P. J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 27, 1950. Shenk, J., and Carter, J., voted for a hearing.