[Civ. No. 17718.   First Dist., Div. Two.   Apr. 28, 1958.]

JAMES E. JONES, JR., et al., Appellants, v. RICHARD H. McCOLLISTER et al., Respondents.

Samuel W. Gardiner, Thomas P. Boyd, Harold O. Galloway, James E. Jones, Jr., Lee V. Holman, Leonard A. Thomas and Joseph G. Wilson for Appellants.

Robert P. Brorby, William W. Schwarzer and William K. Coblentz, as Amici Curiae on behalf of Appellants.

John G. Buresh and Elliot W. Seymour for Respondents.

DRAPER, J.—General demurrer to plaintiffs' complaint for injunction was sustained and leave to amend was granted. Plaintiffs filed their written "Election to Stand upon Complaint." Judgment was thereupon entered in favor of defendants, and plaintiffs appeal.

The complaint was filed 11 days before the general election of 1956. It alleges that shortly before the June primary election defendants had mailed postcards and published newspaper advertisements in support of the candidacy of defendant McCollister for assemblyman from the Seventh Assembly District, consisting of the counties of Sonoma and Marin (Gov. Code, § 491). Card and advertisement were headed "Fellow Democrats:", urged support for McCollister, stated, in part: "Dick McCollister is fully endorsed and recommended by labor, welfare, pension, farm, and other democratic groups. We should re-elect him," and were signed by "Marin-Sonoma Democratic Committee for McCollister." The advertisement also bore, immediately below the name of the committee, the words "Carl Youngberg, Chairman." Plaintiffs allege that they constitute a majority of the members of the Democratic Central Committee of Sonoma County; that defendant McCollister is and for 20 years has been a registered Republican; and (upon information and belief) that "one Loyal Skillman" won the Democratic nomination for assemblyman at the 1956 primary election. There are no

specific allegations as to defendant Youngberg, and his party affiliation does not appear.

It is then alleged, upon information and belief, that the postcard and advertisement "inevitably and naturally tended to and were intended by defendants to persuade or convince" registered Democrats that "McCollister was then a registered Democrat," was a "fellow Democrat," was "endorsed by and was the official candidate of the Democratic Party," and was endorsed for the office of assemblyman "by the official Democratic County Central Committee" of Marin County or of Sonoma County; none of which is true. It is asserted that, unless restrained, defendants will again mail and publish the same or similar postcard and advertisement before the general election of November 6, 1956. If no more were alleged, the issues would be moot, and the appeal would be dismissed, as was done in the companion case of *Morgan* v. *McCollister*, Number 17417, filed by residents of Marin County. Here, however, plaintiffs have further alleged that McCollister has been a registered Republican and the elected assemblyman for many years; that he has used similar advertising in previous campaigns; that in the primary and general election of 1958 he will use postcards and advertisements substantially similar to those here complained of; and that the representations of such advertising will continue to be false in 1958. The prayer is that defendants be restrained from using such advertising material.

Plaintiffs do not allege unauthorized use of the name of a county central committee. Obviously "Marin-Sonoma Democratic Committee for McCollister" is not the title of the Democratic County Central Committee of Marin County or of the like committee of Sonoma County. Nor is there any allegation that the advertised committee is nonexistent, or that its members are not Democrats. The essence of the complaint is that defendants threaten to advertise that a committee of Democrats supports a Republican, and to do so under circumstances which will mislead the voter as to the party affiliation of the candidate. Plaintiffs' brief asserts that "There is no way in which the word 'Democratic' and the word 'committee' can be used in any combination which is legitimate and which in this situation will convey the truth to the average registered voter." This statement is palpably inaccurate. The title "Democratic Committee for Republican McCollister" clearly would be both legitimate and truthful.

It is apparent that the real basis of complaint is that

the advertising fails to specify the party with which defendant candidate is affiliated. But appellants point to no authority requiring such identification.

A brief review of the development of the election system of California will aid in understanding the scope, purpose and extent of the present election laws of this state. At the time of the constitutional convention of 1879, as when our first Constitution was adopted in 1849, a candidate's name could be placed on the ballot only if he was nominated by a political party meeting in convention. For many years, the Legislature exercised but little authority in this field, and the selection of delegates to, and the conduct of, the nominating conventions were usually left to party organizations. In 1897 (Stats. 1897, p. 115) the Legislature provided for nomination by petition of electors. This legislation was held unconstitutional. (*Spier* v. *Baker,* 120 Cal. 370 [52 P. 659, 41 L.R.A. 196].) A further legislative effort to modify and control the machinery of elections (Stats. 1899, p. 47) was also held unconstitutional. (*Britton* v. *Board of Commrs.,* 129 Cal. 337 [61 P. 1115, 51 L.R.A. 115].) To remove these constitutional restrictions, and to give the Legislature a free hand in dealing with the evils which had been prevalent in primary elections, the Constitution was amended in 1900 by adding section 2½ to article II. This section was amended in 1908 to provide that "the Legislature shall enact laws providing for the direct nomination of candidates . . . without conventions." Under this provision, the Legislature adopted the Primary Election Law of 1909 (Stats. 1909, p. 691). The constitutionality of this statute was sustained (*Socialist Party* v. *Uhl,* 155 Cal. 776 [103 P. 181]) and the nomination of candidates directly by the voters became a reality in California (for the foregoing review, see 17 Cal. Jur.2d 310, 311, and cases there collected). The primary election law of 1913 (Stats. 1913, pp. 1379, 1389) specifically provided that a person could "become the candidate of more than one political party for the same office." This provision was held constitutional. (*Hart* v. *Jordan,* 168 Cal. 321 [143 P. 537].) Although this provision was not retained when the Elections Code was adopted, it remains the rule. (*Shaffer* v. *Jordan,* 213 F.2d 393.)

The Constitution (art. II, § 2½) expressly authorizes the Legislature to determine the "tests and conditions upon which electors, political parties, or organizations of electors" may

participate in primary elections (see also *Hart* v. *Jordan*, *supra*). "[T]he question as to what provisions are essential to attain the objects contemplated by section 2½, article II, . . . is one peculiarly within the domain of the legislative department . . ." (*Heney* v. *Jordan*, 179 Cal. 24, 27 [175 P. 402].)

Thus it is highly significant that no statute prohibits the acts here sought to be enjoined. The Legislature has indicated an awareness of the problems arising in the conduct of campaigns, and has occupied the field to an extent sufficient to indicate, particularly in the light of the broad constitutional grant of legislative power, that it would be judicial legislation for us to extend the controls set forth in the code.

Elections Code, section 5005, which has long been in force and which was amended and strengthened by 1957 amendment, makes it a misdemeanor to write or cause to be written, printed, posted or distributed any circular designed to injure any candidate for public office by reflecting upon his personal character or political action, without publication of the names and addresses of those responsible for the publication. Section 5005.5 provides that any circular in violation of the section shall be conclusively presumed not to be privileged in a libel action. Section 5301 requires that any person using the name of a political party in soliciting funds must have the written consent of specified officers of that party, and section 5302 makes a violation of the preceding section a misdemeanor. Finally, as to the office here in issue, the Assembly is the sole and exclusive judge of the "qualifications, elections, and returns of its members." (Cal. Const., art. IV, § 7; *In re McGee*, 36 Cal.2d 592 [226 P.2d 1].) Thus it has power ultimately to determine the propriety of such campaign procedures as those here in question.

The California statutes do not prohibit formation of a committee of members of one party to further the candidacy of a member of another party. In our system of elections, such a prohibition would be anomalous. A candidate registered in one party may seek the nomination of all parties at the primary. If he fails to secure the nomination of his own party, he cannot be the candidate of any party at the general election (Elec. Code, §§ 2742, 2893), but his right to seek the nomination of a party other than his own clearly implies the right to campaign among the members of such opposite party. At the general election it is common practice, consistent with the voters' freedom of choice, for each candidate to appeal for

the votes of members of all parties. Until the Legislature amended the statute (Elec. Code, § 2828) in 1951, a member of a county central committee could not be removed from that committee because he advocated the nomination of a member of an opposing party (7 Ops. Atty. Gen. 347).

The possibility of confusion as to party affiliation of candidates for partisan office has been recognized and guarded against. The party affiliation of each candidate is printed upon the ballot itself in the primary election. (Elec. Code, § 3928.1.) At the general election, the party affiliation of each candidate is similarly shown on the ballot and, if he has been nominated by more than one party, the name of the party with which he is affiliated is the first shown. (Elec. Code, § 3814.) Thus the voter sees, upon the very ballot upon which he marks his vote, as well as upon the sample ballot mailed to him before election day, the true party affiliation of the candidate. This appears a substantial safeguard against confusion or deception of the sort which plaintiffs claim is intended by the defendants here. In view of this recognition of the problem, significance must be attached to the absence of any requirement that party affiliation must be stated in campaign advertising.

In any event, the Legislature has not sought to impose upon the courts the labyrinthine task of supervising the conduct of individual election campaigns, and, in the absence of clear allegations of facts convincingly showing fraudulent misrepresentation, we see no reason to arrogate to the judiciary a task so fraught with the danger of infringement upon the rights of the electorate and its free exercise of the right to choose for itself. Judicial office in this state is officially (Elec. Code, §§ 41, 2541) and traditionally nonpartisan. Yet to establish the precedent here sought would require the courts to assume an active role in the supervision and regulation of party campaigns, to an extent limited only by the ingenuity of candidates and their supporters. The Constitution, in removing from political parties the right to determine the "tests and conditions upon which electors, political parties, or organizations of electors" may participate in state elections, has vested that power in the Legislature, and not in the judiciary.

The California decisions cited by plaintiffs concededly do not directly support grant of the relief here sought. The dicta quoted from them are not helpful. The New York cases relied upon by plaintiffs not only arise under wholly different statutes than those of California, but are premised upon a system

in which political parties play a major role in determining the tests and conditions upon which electors and groups of electors may participate.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied May 28, 1958, and appellants' petition for a hearing by the Supreme Court was denied June 25, 1958. Carter, J., was of the opinion that the petition should be granted.