[Civ. No. 29344. First Dist., Div. Three. Aug. 24, 1972.]

JOHN LEHANE et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

## Counsel

Carroll, Burdick & McDonough and Christopher D. Burdick for Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, Robert A. Kenealey, Deputy City Attorney, Sturgis, Den-Dulk, Douglass & Anderson and Robert T. Anderson for Defendants and Respondents.

## Opinion

**BROWN (H. C.), J.**—This is an appeal from a judgment sustaining a demurrer without leave to amend in an action in which the plaintiffs (a police officer, the Peace Officers Research Association of California, and the San Francisco Police Officers Association) sought an injunction to restrain the City and County of San Francisco from paying dues to the League of California Cities (hereafter League).

The pertinent allegations of the complaint to which the demurrer was sustained may be summarized as follows: The City and County of San Francisco (hereafter San Francisco) is a member of the League, an organization supported by the dues of its member cities. San Francisco pays $14,500 in dues annually. One of the activities of the League is lobbying before the state Legislature. The League has opposed a number of bills which are actively supported by plaintiffs. The payment of the annual dues by San Francisco and the use of the dues by the League for lobbying purposes violates plaintiffs' rights to equal protection of the law, abridges their right to petition the Legislature, and denies their right to freedom of speech and association. In an amended complaint and in the briefs, it is also argued that the payment of dues involves an unlawful delegation of legislative power of the San Francisco Board of Supervisors to the League.

The first issue presented on this appeal is whether the court erred in sustaining a general demurrer to the complaint without leave to amend.

Section 50023 of the Government Code authorizes the expenditure of public funds by a city to support or oppose legislation directly or through a representative. Expenditures for lobbying purposes have been upheld under authorization of the city charter. (*Powell* v. *City & County of S.F.*, 62 Cal.App.2d 291 [144 P.2d 617]; see 15 McQuillin, Municipal Corporations (1970 rev.ed.) § 39.23; see also *Crawford* v. *Imperial Irrigation Dist.*, 200 Cal. 318 [253 P. 726], where employment of a "lobbyist" was

upheld as necessary to accomplishment of purposes authorized.) Nor do appellants challenge the propriety of expenditures of public funds for lobbying purposes. Rather, they challenge the right of the board of supervisors to delegate this power or responsibility to the League. In so doing, respondents challenge section 50024 of the Government Code which specifically provides that the legislative bodies of local agencies may enter into associations and fulfill their lobbying activities through a representative of the association.

■ The argument presented by appellants is that the board of supervisors has delegated a legislative function to the League in that the League is given the power to decide which bills it will oppose and which it will support; that San Francisco has only one vote in the League and can be outvoted and has thus abrogated its function of deciding a basic policy matter for itself.

The constitutional doctrine that legislative power cannot be delegated applies to the power to make or change laws. (See *Kugler* v. *Yocum,* 69 Cal.2d 371, 375-376 [71 Cal.Rptr. 687, 445 P.2d 303]; 2 McQuillin, Municipal Corporations, § 10.39; 3 Witkin, Summary of Cal. Law (1960) p. 1831.) In this sense no legislative power has been delegated to the League. Appellants point, however, to the premise behind the doctrine as articulated by the Supreme Court in *Kugler* v. *Yocum, supra*: "This doctrine rests upon the premise that the legislative body must itself effectively resolve the truly fundamental issues. It cannot escape responsibility by explicitly delegating that function to others or by failing to establish an effective mechanism to assure the proper implementation of its policy decisions." (Pp. 376-377.) Assuming that this premise applies to limit the board's power to participate, it is clear that the amended complaint does not allege facts sufficient to support a theory of an unlawful delegation of power.

The amended complaint does not allege that the League has taken a position contrary to any action by the board of supervisors. Also, it does not allege that the board of supervisors could not take a position contrary to the League and lobby as an individual city for or against a specific bill. It is clear that the complaint could not be amended so as to make these necessary allegations. The exhibits before the court on the hearing for a preliminary injunction reveal that the League does not purport to present the official position of San Francisco. The League presents the official position of the League as determined by the policy makers of the League. If a member city is opposed to the League's position, such member city is in no way prevented from making its position known to the state Legis-

lature. Not only does it appear that the board of supervisors is not bound by the policy decisions of the League, but it also appears that the board may withdraw from membership should it find that differences in lobbying positions outweigh the benefits derived from membership in the League. The board's power to present its view is not negated by membership in the League but is enhanced to the extent that the board has added support for its policy decisions when they coincide with positions taken by the League. For this reason, membership in the League does not contravene the City Charter of San Francisco which provides that the power to decide the policies of San Francisco shall be vested in the board of supervisors. We have concluded that the claim that membership in the League constitutes an unlawful delegation of power is without merit.

█ In asserting that membership in the League denies appellants equal protection of the laws, appellants seem to be arguing that they are being discriminated against because the board does not divide the money it spends in lobbying indiscriminately between all groups. Such division is the very antithesis of lobbying which requires taking a position. If the board of supervisors may properly engage in lobbying, as appellants concede it may, it must perforce take sides. There is no denial of equal protection or unjust discrimination merely because the board of supervisors expends money in support of legislation which appellants oppose. The board of supervisors has the discretion to determine matters for the interests of the entire city, not merely for one segment of the city. If the rule were otherwise, in the area of lobbying, the board could never present its views on legislation before a higher legislative body if any taxpayer or group of taxpayers supported a contrary view.

We conclude that appellants' complaint does not give rise to a cause of action for denial of equal protection of the law.

█ In charging that membership in the League violates constitutional rights of freedom of speech and association of taxpayers who disagree with the positions on legislation taken by the League, the appellants rely upon two Supreme Court cases: *Machinists* v. *Street,* 367 U.S. 740 [6 L.Ed.2d 1141, 81 S.Ct. 1784], and *Lathrop* v. *Donohue,* 367 U.S. 820 [6 L.Ed.2d 1191, 81 S.Ct. 1826].

In *Machinists* v. *Street, supra,* union members argued that their dues could not constitutionally be used to support political causes to which they were opposed. In *Lathrop,* lawyers in an integrated bar association also attacked the use of their dues for such a purpose. In relying upon these cases, appellants liken their position as taxpayers to that of members required to join an association such as a union or an integrated bar. In

neither Supreme Court case, however, did the court decide the constitutional issues raised. In *Machinists,* the court construed the statute in question to deny the union the power to use the protesting members' dues for support of political causes to which the members were opposed, and in *Lathrop,* the court held the complaint did not adequately raise the constitutional questions.

In neither case did a justice express the view that the association could be enjoined from expending moneys to support political causes or legislation to which certain of their members were opposed. In *Machinists,* where the court held the statute in question prohibited use of dues for this purpose, the court stated: "We also think that a blanket injunction against all expenditures of funds for the disputed purposes, even one conditioned on cessation of improper expenditures, would not be a proper exercise of equitable discretion." (P. 772 [6 L.Ed.2d at p. 1163].) Rather, the court remanded the case for either a refund of a portion of the protesting members' dues or injunction against expenditure of a like sum for political causes. The appellants herein seek to restrain San Francisco from membership in the League, clearly an improper remedy if membership in the League is a proper activity of San Francisco.

Membership in the League is a proper municipal activity. (*City of Roseville* v. *Tulley,* 55 Cal.App.2d 601, 606-607 [131 P.2d 395].) The fact that the League engages in lobbying activities does not preclude San Francisco from membership. Membership in a group which carries on such activities was anticipated and provided for by Government Code sections 50023 and 50024. If a taxpayer can restrain a government entity from lobbying for legislation to which the taxpayer is opposed, the power of a government entity to lobby is a power which can never be exercised, for in practice some taxpayer will surely hold a contrary view. If the taxpayer does not agree with the decision of his elected representatives in this area, as in others, his recourse is to vote against them.

Appellants further argue that the trial court abused its discretion in denying petitioners leave to amend. ██ It is not an abuse of discretion to deny leave to amend where it is clearly impossible to amend so as to state a cause of action. (See *Routh* v. *Quinn,* 20 Cal.2d 488, 493 [127 P.2d 1, 149 A.L.R. 215].) The facts herein are not in dispute. Inasmuch as the board of supervisors may lawfully join the League despite the fact that the League supports legislation to which the petitioners are opposed, an amendment would serve no useful purpose.

Appellants next argue that the court acted in excess of its jurisdiction

in sustaining respondents' demurrer before the League had been brought in by the plaintiffs via an amended complaint. The League had submitted itself to the jurisdiction of the court by filing a personal appearance and adopting the demurrer filed by the named defendants. The appellants, however, argue that Code of Civil Procedure section 389 requires that indispensable parties be brought in only by the plaintiffs. Code of Civil Procedure section 389 reads that the court shall order the party asserting the cause of action to bring in the indispensable party. The court did order the League brought in and the League was before the court at the time of the demurrer. The letter of section 389, as well as its purpose, has been fulfilled.

The appellants also contend that the decision on the demurrer to the original complaint denied them the right to file an amended pleading bringing in the party. The only purpose of the amended pleading would be to bring in the indispensable party, not to assert a new or different cause of action. Furthermore, the amended complaint which appellants proposed to file and, in fact, did file is a part of the record on appeal. It raises the question of whether membership in the League is an invalid delegation of legislative power. That issue has been considered. It does not aid appellants in their contention that they have stated a cause of action.

The judgment is affirmed.

Draper, P. J., and Caldecott, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 18, 1972.