[Civ. No. 45140. Second Dist., Div. Four. June 25, 1975.]

DAVID GOLD, Plaintiff and Appellant, v.
LOS ANGELES DEMOCRATIC LEAGUE et al.,
Defendants and Respondents.

368

**COUNSEL**

Michaels & Sobel, Michael D. Sobel and Harold A. Abeles for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, David B. Harriman and Ronald M. Oster for Defendants and Respondents.

## OPINION

DUNN, Acting P. J.—On April 1, 1974, plaintiff commenced an action in the superior court against the Los Angeles Democratic League, Carmen H. Warschaw and various Does to recover damages based upon alleged violation of Elections Code section 12057, upon constructive fraud, negligent misrepresentation, "interference with prospective relationship" and upon a common count for debt on an open book account. Plaintiff also sought an injunction enjoining defendants from violating Elections Code section 12057. Before any defendant answered or demurred, plaintiff filed a first amended complaint (Code Civ. Proc., § 472). The named defendants demurred generally to the first amended complaint, and to each count thereof. The trial court sustained the demurrer without leave to amend, and dismissed the action. (Code Civ. Proc., § 581, subd. 3.) Plaintiff appeals from the order of dismissal (judgment, Code Civ. Proc., § 581d).

The verified first amended complaint was framed in five counts. The first count alleged: plaintiff was a duly registered candidate for the office of city controller in the Los Angeles municipal election held on April 3, 1973; defendant Los Angeles Democratic League is a California corporation transacting business in the County of Los Angeles; defendant Carmen Warschaw is the chairman of the Los Angeles Democratic League; at all times mentioned, plaintiff was a member of the Los Angeles County Democratic Central Committee, which is an official body of the Democratic Party; plaintiff was the endorsed candidate of the committee for the office of city controller in the municipal election of April 3, 1973; on April 2, 1973, defendants mailed to an unknown number of recipients in the Los Angeles area a pamphlet (attached to the amended complaint as an exhibit) containing "Voter Information" for the April 3d election; the pamphlet showed that it had been sent by defendants, urged the recipient to "Vote Democratic," and listed one candidate for each of the offices to be filled in the election; the candidate listed for city controller was Charles Navarro; defendants mailed the pamphlet immediately before the election so that the "effected [sic] candidates" would not have an opportunity to "expose" the mailing prior to the election; the purpose of the mailing was to influence "perspective" (sic) voters to vote for the candidates whom defendants endorsed in the pamphlet; because of the appearance and language of the pamphlet, it appeared to be an endorsement by the Democratic Party; the pamphlet and the representations contained therein were contrary to Elections Code section 12057, which "prohibits misrepresen-

tation as to support of a candidate"; it is necessary that plaintiff be granted a temporary restraining order and a preliminary injunction enjoining defendants from the further mailing of pamphlets of a similar nature, or else plaintiff will suffer irreparable injury in that further mailings might render ineffectual any judgment obtained by him; defendants did the acts alleged with the intent to harm plaintiff, and said acts were done maliciously and oppressively; therefore, plaintiff is entitled to punitive damages of $1,000,000.

Each of the succeeding counts incorporated all of the allegations of the first count (paragraphs 1 through 11) except those which specifically mentioned facts pertinent only to Elections Code section 12057, including those which set forth the basis for injunctive relief. In addition, counts 2 through 5 further alleged as set forth hereinafter.

Count 2 (constructive fraud): on April 2, 1973, each of the defendants was in a position of trust to the public and to the candidates in the forthcoming municipal election, to refrain from disseminating false or misleading information to prospective voters regarding the election; the pamphlet mailed by defendants to "perspective voters" (*sic*) on April 2d conveyed a false and misleading impression regarding which candidates were endorsed by an official branch of the Democratic Party; because of the mailing, candidates who otherwise might not have been successful in the election were successful; each of the defendants did the acts alleged "with the intent of gaining an advantage over those individuals including the plaintiff who may have been endorsed by an official branch of the Democratic Party but who were not represented" in the pamphlet as being so endorsed; in making such misrepresentations, defendants acted maliciously and oppressively, entitling plaintiff to punitive damages of $1,000,000.

Count 3 (negligent misrepresentation): defendants, by mailing the pamphlet, represented to the general public "that certain named candidates had received the endorsement of the Los Angeles Democratic League. The manner in which the pamphlet is printed" conveyed the impression that such defendant was an official branch of the Democratic Party; such representation was false; the true facts were that "the Los Angeles Democratic League was nothing more than an organization composed of individuals or groups who had a special interest in the election of" the candidates listed in the pamphlet; by conveying the impression that it was an official branch of the Democratic Party, defendant league hoped that its endorsement of candidates would

influence the voters of Los Angeles; when defendants made such representations, they had no reasonable ground for believing them to be true, in that defendants had no information concerning the official endorsements of the Democratic Party for the municipal election of April 3, 1973; defendants were aware that without such information they could not accurately state which candidates were endorsed by the Democratic Party or its official branches; on April 2, 1973, defendants concealed from plaintiff and from the general public defendants' lack of such information and their consequent inability accurately to make the statements contained in the pamphlet; in "relience" (*sic*) on these statements, "a great number of voters in" Los Angeles were influenced to and did vote in accordance with defendants' endorsement of candidates in the pamphlet; had the public known the true facts, the majority of them would not have so voted.

Count 4 (interference with "perspective" (*sic*) employment): defendants, knowing that plaintiff was a candidate for the office of city controller, mailed the pamphlet which gave the impression that the candidates listed therein were endorsed by the Democratic Party or by one of its official branches; such representation was false; the true facts were that Charles Navarro, the candidate for city controller endorsed in the pamphlet, was not officially endorsed by the Democratic Party, the Los Angeles County Democratic Central Committee or any other official branch of the Democratic Party; at the time of the election, Mr. Navarro was a registered Republican, as shown by a copy of his voter registration (sworn to by him on Apr. 3, 1969) attached to the amended complaint; when said representations were made by them, defendants knew they were false and made them with the intent wrongfully to interfere with plaintiff's opportunity to be elected to the office of city controller; it was the mailing of the pamphlet which caused the voters to elect Mr. Navarro to such office; as a result of defendants' misrepresentations and "wrongful interference with plaintiffs perspective [*sic*] employment, plaintiff was not elected to the office of City Controller . . . to plaintiffs damage in the sum of $4,400.00"; defendants acted maliciously and in wanton disregard of plaintiff's rights; therefore, plaintiff was entitled to punitive damages of $1,000,000.

Count 5 (common count): within four years last past, at Los Angeles, defendants became indebted to plaintiff on an open book account in the sum of $4,400, representing money expended by plaintiff which defendants are obligated to repay to him; demand having been made therefor, the entire sum is due, owing and unpaid.

The questions presented on this appeal[1] are whether any of the foregoing counts states a cause of action and, if not, whether there is a reasonable possibility that any can be amended to do so. (See: *MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 542 [343 P.2d 36].)

■ The first count is based on defendants' alleged violation of Elections Code section 12057,[2] which provides that no candidate or committee in his behalf may misrepresent that the candidate has the support of a county or state central committee of a party with which he is not affiliated. (See: 17 Cal.Jur.2d, Rev., Elections § 120, p. 436.)

Section 12057 provides that any member of a county or state central committee may commence an action to enjoin the acts prohibited by the statute. ■ But an injunction lies only to prevent threatened injury and has no application to wrongs which have been completed. (*Griffith v. Dept. of Public Works* (1959) 52 Cal.2d 848, 853 [345 P.2d 469]; *Scott v. Scott* (1958) 51 Cal.2d 249, 254 [331 P.2d 641]; *Blackmore Investment Co. v. Johnson* (1931) 213 Cal. 148, 150-151 [1 P.2d 978]; *Blake v. City of Eureka* (1927) 201 Cal. 643, 661-662 [258 P. 945], disapproved on other grounds in *Bellus v. City of Eureka* (1968) 69 Cal.2d 336, 346 [71 Cal.Rptr. 135, 444 P.2d 711]; *People v. Paramount Citrus Assn.* (1957) 147 Cal.App.2d 399, 412-413 [305 P.2d 135].) Thus, to authorize the issuance of an injunction, it must appear with reasonable certainty that the wrongful acts will be continued or repeated. (*Rosicrucian Fellow. v. Rosicrucian etc. Ch.* (1952) 39 Cal.2d 121, 144 [245 P.2d 481]; *Allen v. Hotel & Restaurant etc. Alliance* (1950) 97 Cal.App.2d 343, 348 [217 P.2d

---

[1]In violation of California Rules of Court, rules 13 and 15(a), plaintiff has included in his reply brief matters which are not in the record on appeal. On this ground, defendants moved to strike the brief. (Cal. Rules of Court, rule 18.) We have elected, instead, to disregard those matters in the reply brief which are outside the record. (*Id.*, rule 18(3).)

[2]Elections Code section 12057 reads: "*It is unlawful* for any candidate or committee in his behalf *to represent* in connection with an election campaign, either orally or in campaign material, *that the candidate has the support of* a committee or organization which includes as part of its name the name or any variation upon the name of a qualified political party *with which the candidate is not affiliated,* together with the words 'county committee,' 'central committee,' 'county,' or any other term that might tend to mislead the voters into believing that the candidate has the support of that party's county central committee or state central committee, when that is not the case. [¶] This section shall not be construed to prevent a candidate or committee from representing that the candidate has the support of a committee or group of voters affiliated with another political party, which committee or group is identified by the name of that party, where the name of the committee or group also includes the name of the candidate. [¶] *Any member* of a county central committee or state central committee *may commence an action in the superior court to enjoin* misrepresentation by a candidate or committee in his behalf, in the manner prohibited by this section, to the effect that the candidate has the support of the state or county central committee involved." (Italics added.)

699].) ■ The amended complaint shows on its face that the acts sought to be enjoined were committed by defendants in connection with a municipal election which took place a year before this action was commenced. Plaintiff did not allege that defendants threatened to repeat such acts. Accordingly, there was no basis upon which to grant injunctive relief.

■ Ordinarily, where a statute other, perhaps, than a provision in the four original codes (*Orloff* v. *Los Angeles Turf Club* (1947) 30 Cal.2d 110, 113 [180 P.2d 321, 171 A.L.R. 913]; Civ. Code, §§ 4, 23) creates an obligation and also provides a remedy for breach of that obligation, the statutory remedy so provided is exclusive. (See: *Russell* v. *Pacific Railway Co.* (1896) 113 Cal. 258, 261 [45 P. 323]; *County of Monterey* v. *Abbott* (1888) 77 Cal. 541, 543 [18 P. 113, 20 P. 73]; *Smith* v. *Omnibus R. R. Co.* (1868) 36 Cal. 281, 283; *Ward* v. *Severance* (1857) 7 Cal. 126, 129; *People* v. *Craycroft* (1852) 2 Cal. 243, 244. But see: *Orloff, supra,* 30 Cal.2d at p. 118, which case is readily distinguishable for the reason, if no other, that the statutorily provided remedy affords adequate relief, properly employed.) ■ Here, a cause of action for damages could not be predicated upon defendants' alleged violation of Elections Code section 12057.[3]

■ The second and third counts are based upon alleged constructive fraud and negligent misrepresentation, respectively. "Constructive fraud" arises from a breach of duty by one in a confidential or fiduciary relationship to another which induces a justifiable reliance by the latter to his prejudice. (Civ. Code, § 1573; *Odorizzi* v. *Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 129 [54 Cal.Rptr. 533].)

Negligent misrepresentation is a form of "actual fraud." (Civ. Code, §§ 1572, subd. 2, 1710, subd. 2;[4] *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487, fn. 4 [275 P.2d 15]; *Clar* v. *Board of Trade* (1958) 164 Cal.App.2d

---

[3]In the first count, plaintiff sought only punitive damages for defendants' alleged violation of section 12057; he did not allege that he suffered any actual damages because of such violation. Punitive damages are merely incident to a cause of action, and can never constitute the basis thereof. (Civ. Code, § 3294; *Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co.* (1957) 48 Cal.2d 71, 77 [307 P.2d 626]; *Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 801-802 [197 P.2d 713]; *Mother Cobb's Chicken T., Inc.* v. *Fox* (1937) 10 Cal.2d 203, 206 [73 P.2d 1185]; *Clark* v. *McClurg* (1932) 215 Cal. 279, 282 [4 P.2d 149, 9 P.2d 505, 81 A.L.R. 908]; *Sasser* v. *Miles & Sons Trucking Service* (1953) 119 Cal.App.2d 239, 241, 243-244 [259 P.2d 488]; *Birch Ranch & Oil Co.* v. *Campbell* (1941) 43 Cal.App.2d 624, 628 [111 P.2d 445].)

[4]Civil Code section 1572 defines actual fraud as: "2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not

636, 644 [331 P.2d 89]; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 481, p. 2740.) ■ The elements of a cause of action for actual fraud are: (1) a false representation of a material fact, (2) made recklessly or without reasonable ground for believing its truth, (3) with intent to induce reliance thereon, (4) on which the plaintiff justifiably relies, (5) to his injury. (See: *Gonsalves* v. *Hodgson* (1951) 38 Cal.2d 91, 100-101 [237 P.2d 656]; *Sixta* v. *Ochsner* (1960) 187 Cal.App.2d 485, 489 [9 Cal.Rptr. 617]; *Hill* v. *Wrather* (1958) 158 Cal.App.2d 818, 823 [323 P.2d 567]; *Cohen* v. *Citizens Nat. Trust etc. Bank* (1956) 143 Cal.App.2d 480, 483 [300 P.2d 14]; *Cox* v. *Westling* (1950) 96 Cal.App.2d 225, 229 [215 P.2d 52].)

■ Thus, two elements of fraud, whether actual or constructive, are: the plaintiff's justifiable reliance and resulting damage to him.

Assuming that plaintiff was among those members of the general public to whom defendants mailed the pamphlet containing the purported misrepresentation, neither the second count nor the third count alleges that plaintiff reasonably relied on such misrepresentation. Moreover, because of the nature of the alleged misrepresentation, such an allegation would have been impossible to make because plaintiff, as the candidate for city controller endorsed by, and as a member of, the Los Angeles County Democratic Central Committee, obviously could not have relied upon, or been misled by, defendants' alleged misrepresentation that another candidate for that office was endorsed by the Democratic Party.

To state a cause of action at law based upon fraud (as distinguished from a cause of action in equity for rescission on the ground of fraud), the plaintiff must allege not only reliance but that, by reason of the fraud, he has suffered pecuniary damage in some amount. (*Munson* v. *Fishburn* (1920) 183 Cal. 206, 219-220 [190 P. 808]; *Abbot* v. *Stevens* (1955) 133 Cal.App.2d 242, 247 [284 P.2d 159].) Lacking in the second and third counts is an allegation that plaintiff suffered any actual damage because of defendants' misrepresentation.[5]

It follows that neither the second nor the third count states a cause of action for fraud, actual or constructive, nor, because plaintiff could not

---

true, though he believes it to be true."

Civil Code section 1710 defines deceit as: "2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."

[5]In the second count, plaintiff alleged only punitive damages, which cannot constitute the basis of a cause of action. (See fn. 3.)

justifiably have relied on the alleged misrepresentation, could such counts be amended to state a cause of action.

■ The fourth count is based upon intentional interference with plaintiff's prospective employment (i.e., interference with his opportunity to be elected to the office of city controller). ■ An action lies for intentional interference with advantages which are merely prospective; such an action is governed by the principles applicable to the tort of inducing a breach of contract intentionally and without justification. (See: 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 392, p. 2643.) ■ To state a cause of action for inducing a breach of contract, the plaintiff must allege: (1) he had a valid and existing contract; (2) the defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the other contracting party; (4) the breach was caused by defendant's wrongful and unjustified conduct; and (5) plaintiff suffered damage as a result of the breach. (*Charles C. Chapman Building Co.* v. *California Mart* (1969) 2 Cal.App.3d 846, 853 [82 Cal.Rptr. 830]; *Springer* v. *Singleton* (1967) 256 Cal.App.2d 184, 187-188 [63 Cal.Rptr. 770, 27 A.L.R.3d 1220]; *Freed* v. *Manchester Service, Inc.* (1958) 165 Cal.App.2d 186, 189 [331 P.2d 689].)

■ The fourth count alleged: plaintiff was an announced candidate for the office of city controller in the election held April 3, 1973; on April 2d defendants, with knowledge of plaintiff's candidacy, mailed to prospective voters a pamphlet which falsely gave the impression that Charles Navarro, rather than plaintiff, was the candidate for city controller officially endorsed by the Democratic Party; defendants knew the representation was false and made such misrepresentation with the intent to interfere with plaintiff's opportunity for election to the office of city controller; as a result of the misrepresentation and interference, plaintiff was not elected, and thereby suffered damage in the sum of $4,400. By analogy to the elements of a cause of action for inducing a breach of contract, the foregoing allegations state a cause of action for defendants' intentional interference with plaintiff's opportunity to be elected to the office of city controller.[6] (See Rest., Torts, § 865.)

---

[6]In addition to alleging actual damages of $4,400, the fourth count alleged that plaintiff was entitled to punitive damages of $1,000,000. The fourth count thus states a cause of action within the original jurisdiction of the superior court (Cal. Const., art. VI, § 10; Code Civ. Proc., § 89) because in determining the existence of such jurisdiction, a plea of punitive damages must be added to a plea of actual damages. (*Muller* v. *Reagh* (1957) 150 Cal.App.2d 99, 102 [309 P.2d 826]; *Schwartz* v. *Cal. Claim Service* (1942) 52 Cal.App.2d 47, 56-57 [125 P.2d 883].)

Defendants contend no such cause of action is stated because the alleged misrepresentation made by them was justified as an exercise of free speech, guaranteed by the First Amendment to the federal Constitution. ■ "Justification is an affirmative defense and may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint." (*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 207 [14 Cal.Rptr. 294, 363 P.2d 310].) ■ The allegations of the fourth count tend to show that, because of the misrepresentation, the election did not express the will of an undeceived, well-informed public. (*Canon* v. *Justice Court* (1964) 61 Cal.2d 446, 451-453 [39 Cal.Rptr. 228, 393 P.2d 428].) The amended complaint does not show on its face that defendants' statement was justified on the ground it was protected by the First Amendment. (See: *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279 [11 L.Ed.2d 686, 706, 84 S.Ct. 710, 95 A.L.R.2d 1412].)

■ The fifth count seeks recovery of $4,400 under a common count, alleging that defendants became indebted to plaintiff for this sum on an open book account "for money expended and for which the defendants and each of them is responsible to the plaintiff for repaying." ■ A plaintiff who has suffered damage from a defendant's tortious conduct may "waive the tort and sue in assumpsit"; that is, he may elect the quasi-contract remedy of restitution in lieu of the tort remedy of damages. (3 Witkin, Cal. Procedure (2d ed.) Pleading, § 430, p. 2087.) The common count is an accepted method of pleading in an action in quasi-contract. However, if there is no basis for restitution, the common count may not be employed. (*Id.*, pp. 2087, 2088.)

In *Allen* v. *Powell* (1967) 248 Cal.App.2d 502 [56 Cal.Rptr. 715, 29 A.L.R.3d 1218], the plaintiffs pleaded a common count, thereby waiving the tort of interference with contract and suing in assumpsit. The court held that a common count did not lie in this situation, stating (p. 510): "However, the fatal defect is the lack of an allegation of consideration furnished. In fact, such an allegation is impossible. The 'consideration' is a fiction when the tort is *waived*, for there is no intent to give anything as an agreed exchange. But, in order to employ the fiction, there must be something moving to the defendant, to support the implied promise to pay therefor. In the instant case, there is nothing so moving in order for plaintiffs to waive the tort. No more so, that is, than there would be with an assault and battery or negligence case."

Here, the common count represents an attempt by plaintiff to waive the tort of interference with a prospective advantage alleged in the fourth count. The common count is defective because it does not allege any consideration moving from plaintiff to defendants upon which to base an implied promise of repayment on their part. As in the *Allen* case, such an allegation is impossible because of the nature of the underlying tort. Therefore, plaintiff must rely on the tort, which has been sufficiently alleged in the fourth count.

The fourth count states a cause of action, and it was therefore an abuse of discretion to sustain the demurrer to that count. (*Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].) The first, second, third and fifth counts, however, do not state a cause of action, and none of them can be amended to do so. Therefore, the trial court did not abuse its discretion in denying leave to amend such counts. (See: *Routh* v. *Quinn* (1942) 20 Cal.2d 488, 493-494 [127 P.2d 1, 149 A.L.R. 215]; *Lehane* v. *City etc. of San Francisco* (1972) 30 Cal.App.3d 1051, 1056 [106 Cal.Rptr. 918]; *City of Ceres* v. *City of Modesto* (1969) 274 Cal.App.2d 545, 554 [79 Cal.Rptr. 168]; *Robinson* v. *Robinson* (1961) 198 Cal.App.2d 193, 197 [17 Cal.Rptr. 786]; *Robertson* v. *City of Long Beach* (1937) 19 Cal.App.2d 676, 679 [66 P.2d 167].)

The judgment is reversed as to the fourth count. The trial court is directed to overrule the demurrer to that count, only, and to permit defendants to file an answer thereto. Appellant is to bear the costs of appeal of both parties because of serious violations of the rules governing appeals. (Rule 26(a), Cal. Rules of Court.)

Jefferson, J.,* concurred.

**COLE, J.,†** Concurring and Dissenting.—Insofar as the court holds that the demurrer was properly sustained to the first amended complaint, I agree, although there are more substantive reasons for my concurrence than appear in the majority opinion. However, I respectfully dissent from the holding that the demurrer to the fourth cause of action should have been overruled. It is my view that for sound reasons of public

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.

policy a defeated candidate cannot assert a personal cause of action for relief of the type sought here.[1]

*First,* the personal relief which is sought would involve the courts in the supervision of election campaigns to a degree unwarranted by existing law. This intrusion, in support of a private monetary remedy, ought not to be undertaken by the courts, at least in the absence of a clear legislative mandate which has not been given. (Compare *Alexander* v. *Todman* (3d Cir. 1964) 337 F.2d 962, 967-969, cert. den., 380 U.S. 915 [13 L.Ed.2d 800, 85 S.Ct. 893].)

The reasoning of *Jones* v. *McCollister, supra,* 159 Cal.App.2d 708, is applicable. There, members of a county Democratic central committee sought to enjoin the dissemination of newspaper advertisements favoring a Republican candidate for the Assembly which advertisements were addressed to "Fellow Democrats" and signed by "Marin-Sonoma Democratic Committee for McCollister." The court affirmed a judgment of dismissal entered after a general demurrer was sustained. It said: " . . . [T]he Legislature has not sought to impose upon the courts the labyrinthine task of supervising the conduct of individual election campaigns, and, in the absence of clear allegations of facts convincingly showing fraudulent misrepresentation, we see no reason to arrogate to the judiciary a task so fraught with the danger of infringement upon the rights of the electorate and its free exercise of the right to choose for itself. Judicial office in this state is officially (Elec. Code, §§ 41, 2541) and traditionally nonpartisan. Yet to establish the precedent here sought would require the courts to assume an active role in the supervision and regulation of party campaigns, to an extent limited only by the ingenuity of candidates and their supporters. The Constitution, in removing from political parties the right to determine the 'tests and conditions upon which electors, political parties, or organizations of electors' may participate in state elections, has vested that power in the Legislature, and not in the judiciary. . . ." (159 Cal.App.2d at p. 713.) As in *McCollister,* our Constitution gives to the Legislature, not the courts, the responsibility at issue in this case, it being to "prohibit improper

---

[1]In a proper case Elections Code, section 12057, gives a member of a county or state central committee the right to seek an injunction against misrepresentations that a candidate has the support of the committee involved. The court is correct, of course, in holding that no such action lay here, since litigation was not commenced until a year after the election. Additionally, the use of the name "The Los Angeles Democratic League" cannot reasonably be read as implying that the Democratic County or State Central Committee supported the Navarro candidacy. (*Jones* v. *McCollister* (1958) 159 Cal.App.2d 708, 710 [324 P.2d 639].)

practices that affect elections . . . ." (Cal. Const. art II, § 3.)[2] The Legislature has not created a private remedy, and unless it does the courts ought not to intrude.

*Second,* the majority correctly notes that ordinarily where a statute creates an obligation and provides a remedy for breach of the obligation, the statutory remedy so provided is exclusive, if it is adequate. (*Orloff* v. *Los Angeles Turf Club, Inc.* (1947) 30 Cal.2d 110, 112-113 [180 P.2d 321, 171 A.L.R. 913].) Elections Code, section 12057, relied upon by plaintiff provides for injunctive relief in a factual setting where the section is applicable. (See fn. 1, *supra.*)

It is apparent, nevertheless, that in disseminating the pamphlet in question the defendants misled the voters as to the party affiliation of Charles Navarro, the successful candidate. The complaint alleges that Mr. Navarro is a registered Republican. The pamphlet can be fairly read only as implying that he is a Democrat.[3] Thus, it is a fraud on the public. It is unnecessary here to express an opinion as to the materiality of a misrepresentation of party status in an election constitutionally required to be non-partisan. (Cal. Const., art II, § 5.) Assuming that the misrepresentation is material, it appears quite arguable that, in the discharge of its constitutional responsibilities the Legislature has provided a completely adequate remedy by the enactment of Elections Code, section 29132.[4] Thus, criminal and injunctive sanctions have been imposed by the Legislature. It is for that body, and not the courts, to create a private remedy.

*Third,* since this matter is here on demurrer we are required to assume the truth of all of the allegations of the amended complaint, no matter how improbable they may be. (3 Witkin, Cal. Procedure (2d ed.) p. 2413 and cases cited.) Thus, we must assume the truth of the allegations "that

---

[2]Restatement of Torts, section 865, referred to by the majority, finds support in non-California cases (cited in Tentative Draft No. 16 to Rest. 2d Torts, notes to § 865) which, so far as elections are concerned, deal only with the failure to perform or misperformance of ministerial duties by clerks and other election officials.

[3]At the top of a simulated ballot page listing only one candidate for each of several municipal offices, including Mr. Navarro as candidate for controller, the pamphlet states "Vote Democratic".

[4]Elections Code, section 29132, reads: "Every person or corporation is guilty of a misdemeanor who, by abduction, duress, or any forcible or fraudulent device or contrivance whatever, impedes, prevents, or otherwise interferes with the free exercise of the elective franchise by any voter; or who compels, induces, or prevails upon any voter either to give or refrain from giving his vote at any election, or to give or refrain from giving his vote for any particular person at any election."

it was the mailing of the aforesaid pamphlet that induced the public in general to elect Charles Navarro to the office of City Controller" and that "as a proximate result of" defendants' acts "plaintiff was not elected to the office of City Controller. . ." (Cf. *Bush* v. *Head* (1908) 154 Cal. 277, 284 [97 P. 512].) The proof of these allegations is essential to any cause of action based upon interference with a prospective relationship. (*Wilson* v. *Loew's, Inc.* (1956) 142 Cal.App.2d 183 [298 P.2d 152].) To accomplish that proof plaintiff obviously is going to have to show that substantial numbers of voters who cast legal ballots in the election would have voted differently had it not been for the pamphlet.[5] As a matter of substantive law the testimony of such voters should not be allowed. In *Bush* v. *Head, supra,* the Supreme Court said:

". . . Apart from other considerations it must be obvious that public policy, demanding, *inter alia,* the preservation of 'secrecy in voting' (Const., art. II, sec. 5) [now art. II, § 6] would not be subserved by permitting the vote of a *lawful* elector, who had cast his ballot in regular manner and form, to be impeached by a judicial inquiry into the reasons which led him to cast that ballot in favor of one candidate rather than another. . . ." (154 Cal. at p. 282; (italics added).)

This is not an election contest where, under proper circumstances, the nature of *illegal* votes may be inquired into. (E.g., *Canales* v. *City of Alviso* (1970) 3 Cal.3d 118 [89 Cal.Rptr. 601, 474 P.2d 417].) The public policy referred to in *Bush* underscores the point first made that the issue here is essentially a political one, not for the consideration of a court. In determining whether a question is of the political category so as not to be justiciable, the dominant considerations are the appropriateness of attributing finality to the action of the political department, and the lack of satisfactory criteria for a judicial determination. (*Coleman* v. *Miller* (1939) 307 U.S. 433, 454-455 [83 L.Ed. 1385, 1396-1397, 59 S.Ct. 972, 122 A.L.R. 695].) Such criteria are present here.

---

[5]The court might take judicial notice that in the Los Angeles primary nominating election in question Navarro, the winner, polled 357,681 votes out of a total of 581,278 votes cast. Plaintiff Gold placed second with 81,665 votes, and five other candidates shared the rest. To prove the allegations, plaintiff will have to show that but for the pamphlet at least 67,043 voters would have voted differently so as to deprive Navarro of his majority, assuming that the same number of votes would have been cast. In that event, and also assuming that Gold would have retained second position, Navarro and Gold would have been forced into a runoff. It could well be urged that the effect of the pamphlet on Gold's ability to win the ultimate general election is too remote and speculative to justify judicial intervention. (*Hill* v. *Carr* (1914) 186 Ill.App. 515.)

*Fourth,* while this is not an action claiming that defendants libeled or slandered plaintiff, (he was not even mentioned in the pamphlet complained of) the first amended complaint does assert that defendants' campaign tactics unfairly deprived plaintiff of the election. In *Noonan v. Rousselot* (1966) 239 Cal.App.2d 447, 450 [48 Cal.Rptr. 817], the court found it unnecessary to decide whether the law allows such an action "for it is clear that if defendants' utterances are protected by the First Amendment, the power of this state to penalize them does not depend on the name given to the wrong. '. . . a state cannot foreclose the exercise of constitutional rights by mere labels.' (*N.A.A.C.P. v. Button,* 371 U.S. 415, 429 . . . .)"

The majority here facilely asserts that the fourth cause of action is viable "[b]y analogy to the elements of a cause of action for inducing a breach of contract." It rejects the defendants' argument that First Amendment considerations justified the pamphlet by asserting that justification is an affirmative defense not to be considered on demurrer unless it appears on the face of the complaint[6] and states that the amended complaint here does not show on its face that the statements were justified. It is patent that the statements were made in the course of an election campaign, by means of a printed pamphlet disseminated to potential voters. It escapes me why such an expression of speech is not initially protected by the First Amendment, unless made with that type of actual malice defined in *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 280 [11 L.Ed.2d 686, 706, 84 S.Ct. 710, 95 A.L.R.2d 1412], i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not." *Noonan v. Rousselot, supra,* makes it clear that "the novel civil wrong which plaintiff wishes us to establish" (239 Cal.App.2d at p. 452) is subject to the *New York Times Co. v. Sullivan* requirements of proving actual malice, and that such malice must be pleaded (239 Cal.App.2d at pp. 452-453).

The first amended complaint here does not measure up to that standard. It does allege that defendants made representations which they knew to be false and which were made with the intent to wrongfully interfere with plaintiff's opportunity to win election as city controller of Los Angeles. But the representations referred to are that "the candidates

---

[6]The principle of law is correct. Justification is an affirmative defense, not to be considered on demurrer unless shown on the face of the complaint, not only in connection with the tort of inducing breach of contract upon which the majority relies (*Herron v. State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 206-207 [14 Cal.Rptr. 294, 363 P.2d 310]) but also in connection with the tort of interference with prospective economic advantage purportedly involved here (*A.F. Arnold & Co. v. Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 714 [104 Cal.Rptr. 96]).

endorsed within the pamphlet were the official endorsement [*sic*] of the Democratic party or an official branch of the Democratic party." As pointed out above (fn. 1) the pamphlet cannot reasonably be so read. Thus, even if a cause of action otherwise existed, this court should not direct the trial court to overrule the demurrer, but rather should allow plaintiff leave to amend to bring himself within the *New York Times* requirements if he can. However, this dissent need not be predicated on this narrow point but rather on the broader propositions discussed above.

I would affirm the judgment (order) of dismissal.